The State v. Shew.

---

## THE STATE OF KANSAS v. G. M. SHEW.

### No. 813.

1. INTOXICATING LIQUORS—*Evidence—Memoranda.*  Where material testimony of a witness for the state was declared by the witness to rest on a memorandum made by him in a book not produced in court, *held*, error to limit narrowly the cross-examination in respect to the alleged memorandum book.

2. —————— *Detectives—Evidence of Employment.*  Where the testimony for the state in a misdemeanor case was entirely that of two paid detectives, *held*, error to sustain an objection made by the state to a question asked one of the detectives on cross-exami-

nation concerning the amount paid him by the county attorney for his services.

3. ———— *Motives of Witness—Instructions.* It is the duty of the trial court to instruct the jury to scrutinize closely the testimony of any one who acted as a detective for the state in the transaction wherein the defendant is alleged to have committed a misdemeanor, and who may have had a motive for testifying that an illegal sale of intoxicating liquor was made, even though no such sale was actually made.

4. ———— *Erroneous Assumption in Instruction.* Instructions which assumed the existence of a state of facts not shown by the evidence held erroneous.

Appeal from Harvey district court; MATTHEW P. SIMPSON, judge. Opinion filed May 12, 1899. Reversed.

*L. C. Boyle*, attorney-general, and *W. S. Allen*, county attorney, for The State.

*Bowman & Bucher*, for appellant.

The opinion of the court was delivered by

MILTON, J.: Appellant was convicted before a jury in the district court of Harvey county of a violation of the prohibitory law and was sentenced by the court to pay a fine of $100 and to be imprisoned thirty days in the county jail. The information charged that on the 26th day of August, 1897, the defendant "did then and there unlawfully, without taking out a permit from the probate judge of said county, bargain, sell and give away intoxicating liquor." The defendant's motion to quash the information was overruled, as was also his motion to require the state to file a bill of particulars.

The testimony on behalf of the state was that of two detectives, Pinneo and Dobson, who had been employed by the county attorney of Harvey county to procure and furnish evidence against persons engaged

in the unlawful sale of intoxicating liquors in that county. They came to Newton from St. Joseph, Mo., early in the month of August, 1897, and Pinneo at once began to cultivate the acquaintance of appellant, who appears to have been a man of good reputation, and who had resided in Newton for twenty years, during the last thirteen of which he had acted as local agent of the Pacific Express Company. He received a stated salary, and no commissions on business done, for his services as agent. G. W. Hurst, a jeweler, occupied a portion of appellant's office, and frequently delivered express matter for appellant, in the latter's absence. On the 17th of August, Pinneo went into Shew's office and made bitter complaint of the quality of whisky he was obliged to put up with in Newton, and asked Shew if he knew where any good whisky could be bought. Shew told him that some parties had recommended a certain brand of whisky sold by Dreyfus & Co., of Kansas City, Mo. After inquiring the price, Pinneo requested Shew to send there for a gallon of the whisky, and Shew thereupon wrote an order on an order-blank addressed to Dreyfus & Co., for one gallon of the liquor, and also wrote an express money-order for $2.25, and enclosed both orders in an envelope addressed to the office of the Pacific Express Company in Kansas City, Mo. He did not deliver the receipt for the money-order to Pinneo nor did the latter pay for the same. Shew claimed that Pinneo left the room before he had finished writing the money-order, and that, feeling confident payment would be made therefor, the transaction was completed without requiring such payment. The liquor was shipped promptly in a gallon jug and the jug in a box. Pinneo gave his name to the agent as being M. Pennington, and the receipt for the money-order and the stub, as

well as the address marked on the box containing the liquor, were in that name.

Shortly after the liquor arrived in Newton, Pinneo and Dobson went to the express office and Pinneo there introduced Dobson to Shew, stating that he himself might not call for the liquor and that in that event it should be delivered to Dobson. The latter subsequently called for the package, and the same was delivered to him by Hurst, in the absence of Shew. Dobson claimed that he paid $3.40 to Hurst for the package, such payment including the price of the liquor and the express charge; while Hurst testified that the express charge was sixty-five cents and that Dobson paid in addition thereto $2.25, the amount of the money-order which had been issued and forwarded by Shew. The whisky, with the exception of a small portion which the detectives had removed from the jug, was delivered to the county attorney and was afterward exhibited on the trial. After Dobson had stated that he paid $3.40 when the package was delivered to him, he qualified his statement somewhat and mentioned that he had made a memorandum of the amount in a book which he then held in his hand. Upon examination he stated that he was mistaken, and that the memorandum was in another book. Counsel for defendant asked the witness to describe the book in which the memorandum was made, but upon objection being made by the state's attorney to the question such objection was sustained. The court sustained the state's objection to the following question asked by counsel for defendant of the witness Pinneo on cross-examination: "How much did he (meaning the county attorney) pay you?" The court also refused to give an instruction which was asked for by the defendant concerning the credibility of witnesses

whose connection with the prosecution was that of spotters or detectives, and failed to cover that phase of the case in any of the instructions given.

The court gave the following, among other instructions, the defendant excepting :

" 8. If you believe from the evidence, beyond reasonable doubt, that the express company, of which the defendant is admitted to be an agent, furnished or procured the said liquor itself and afterwards sold and delivered the same to the witness Pinneo, or to another person authorized by Pinneo to receive it, and that the defendant knowingly aided and assisted the said express company in the transaction, you should find the defendant guilty as charged, notwithstanding the said express company may have purchased the said whisky solely for the purpose of reselling and delivering the same to the witness Pinneo.

" 9. If you find from the evidence, beyond reasonable doubt, that the defendant in the transaction relied upon by the state for conviction acted as the agent of the firm of H. Dreyfus & Co., or that the express company of which defendant is agent acted as the agent of said firm of H. Dreyfus & Co. in said transaction, and the defendant knowingly aided and assisted said express company in the transaction, and that the said whisky was sold by the said firm of H. Dreyfus & Co. through and by said express company or the defendant as agent of said H. Dreyfus & Co., you should find the defendant guilty as charged in the information."

Counsel for appellant have made thirty-nine specifications of error and have discussed the major portion of them. We shall consider only four of the alleged errors.

One of the most important questions on the trial was that relating to the amount paid by Dobson for the express package which contained the liquor. He testified that he paid $3.40 to obtain the package,

while Hurst stated that the amount paid was $2.90. As the money-order was for $2.25 and the express charge sixty-five cents, Shew profited by the transaction to the extent of fifty cents, if the testimony of Dobson were accepted as true.   On the other hand, Shew claimed to have made no profit whatever and to have acted in the premises merely to accommodate Pinneo.   It thus became very important that the state should clearly prove the amount paid by Dobson, and as he based his recollection in a large measure on a memorandum, a very wide latitude should have been allowed to the defendant upon cross-examination in respect to the alleged memorandum.   We think the court erred in sustaining the objection to the question asked of the witness concerning the memorandum book.

The deception practiced by Pinneo toward Shew, as a result of which this prosecution was brought, was of such character that it cannot meet with commendation on the part of this or any other court.   In view of his peculiar relation to the case, Pinneo should have been required to disclose fully the pecuniary interest he had therein.   He was employed to discover violations of the prohibitory law and to procure evidence of such violations.   It is not to be presumed that he was engaged by the county attorney to create a state of facts which might indicate that the law had been violated.   It was entirely proper to ask the witness how much the county attorney paid him for his services.   The jury should have been fully advised as to the motives and inducements which influenced his actions.   In a similar case the supreme court of Iowa has said (*State v. Carroll*, 85 Iowa, 1, 51 N. W. 1159) :

"The system of detection by means of false pretenses, lying and deceit on the part of the detective

can only be justified, if justified at all, by the fullest and most searching examination of the motives and inducements under which he acts.    No party acting in that capacity should be allowed to keep back or conceal any fact which bears upon the motives by which he is controlled in the pursuit of his employment.''

In view of the fact that the state's case rested entirely on the testimony of Pinneo, who suggested the transaction which he afterward denounced as a crime, and of Dobson, who figured in the transaction, and in view of the further fact that they were both paid for their work as detectives in this case, we think the jury should have been properly warned and cautioned in respect to their credibility as witnesses.    The decision in *The State v. Keys*, 4 Kan. App. 14, 45 Pac. 727, is not only not opposed to this view, but sustains it.    From the opinion, we learn that the trial court had instructed the jury to scrutinize closely the testimony of any one who acted in the transaction as a detective or spotter, and who may have had a motive for testifying to illegal sales when none was in fact made.    The proposition now before us is very fully discussed by the supreme court of Colorado in the case of *Conner v. The People*, 4 Colo. 134, 33 Pac. 159. The views there expressed appear to be eminently proper.    Evidently the trial court overlooked the importance of this phase of the case.    Its refusal to give the instruction No. 2, asked for by the defendant, was error.

Instructions 8 and 9 given by the trial court cannot be upheld.    As we view the record, there were no facts indicating that the express company of which defendant was an agent procured the liquor and afterward sold and delivered the same to Pinneo or to another person authorized by him to receive it.    The defend-

ant was not charged with a violation of the provision of the prohibitory law relating to officers, agents or employees of a railroad company, express company, or other common carrier, but was charged generally with unlawfully bartering, selling and giving away intoxicating liquor. We are unable to say that the jury might not have been influenced by the said instructions.

In all respects except the foregoing the case appears to have been very carefully tried. For the reasons we have stated, the judgment of the district court will be reversed and the cause remanded for a new trial.