Ford v. The State.

Filed Nov. 29, 1887.

| 112 | 373 |
|-----|-----|
| 113 | 239 |
| 115 | 502 |
| 121 | 271 |
| 112 | 373 |
| 125 | 41 |
| 125 | 420 |
| 112 | 373 |
| 135 | 414 |
| 135 | 576 |
| 112 | 373 |
| 142 | 423 |
| 112 | 373 |
| 162 | 182 |

No. 13,655.

## FORD v. THE STATE.

CRIMINAL LAW.—*Indictment.*—*Motion to Quash.*—*Motion in Arrest.*—*Grand Jury.*—*Plea.*—A motion to quash or in arrest of judgment reaches only the indictment, and raises no question as to the qualifications or empanelment of the grand jury, or as to whether the indictment was properly returned. These questions must be raised by plea.

SAME.—*Grand Jury.*—*Record of Empanelment.*—*Sufficiency of.*—For record which, it is held, sufficiently shows that the grand jury was legally constituted, and the indictment properly returned, see opinion.

SAME.—*Arson.*—*Indictment.*—*Uncertainty.*—*Surplusage.*—An indictment for arson, which describes the property alleged to have been burned as a "mill-house," is in that respect not bad for uncertainty; and the further averment that the mill-house was personal property may be treated as surplusage, and does not affect the indictment one way or the other.

SAME.—*Variance.*—Where, in a prosecution for arson, the indictment averred that the property burned was a mill-house, which was personal property, and the evidence showed the building to have been real estate, and that it was a grist-mill or mill building, the variance, if any, is not fatal.

Ford v. The State.

SAME.—*Conspiracy.*—*Evidence.*—*Declarations of Co-Defendant.*—Declarations
or threats made by a co-defendant, not on trial, in the absence of the
defendant, long before the commission of the crime charged, and before
the period at which it is claimed a conspiracy was formed looking to
its commission, are not admissible in evidence.

SAME.—*Evidence.*—*Communication of Threats.*—In a trial for arson the ad-
mission of evidence that threats made by a defendant, not on trial, had
been communicated to the owner of the property alleged to have been
burned, is erroneous.

SAME.— *Witness.*—*Cross-Examination.*—*Collateral Questions.*—*Interest or Hos-
tility of Witness.*—*Contradiction.*—Where a witness is cross-examined on
a matter collateral to the issues, his answer can not be subsequently
contradicted by the party putting the question; yet, where the question
on cross-examination goes to the interest of the witness or his hostility
to one of the parties, and he denies such interest or hostility, he may
be contradicted by evidence of his own statements, or other impli-
cative acts.

SAME.—Where, in a trial for arson, a witness on cross-examination denies
having made hostile declarations concerning the owner of the property
alleged to have been burned, it is competent for the cross-examining
party to introduce evidence that such declarations were made.

From the Hamilton Circuit Court.

*C. L. Henry, H. C. Ryan, W. R. Pierse* and *C. B. Gerard,*
for appellant.

*J. F. Neal,* Prosecuting Attorney, *M. S. Robinson* and *J.
W. Lovett,* for the State.

ZOLLARS, J.—Appellant was jointly indicted in the Madi-
son Circuit Court with John Cottrell and James T. Ford.
In the first count of the indictment, the three parties are
charged with the burning of a mill, the property of James
and William Woodward. In the second count, Cottrell is
charged with burning the mill, and the Fords are charged
as accessories before the fact.

Upon a change of venue, appellant was tried and con-
victed in the Hamilton Circuit Court. He questioned the
sufficiency of the indictment by a motion to quash, and by
a motion in arrest of judgment. He assigns as errors in this
court the overruling of those motions and the overruling of
his motion for a new trial.

Ford *v.* The State.

Under those assignments, he makes the points that the record does not show that the indictment was returned by the grand jury into open court, and that it does not show that the grand jury was legally constituted.

There are two sufficient answers to the points thus made. In the first place, the record sufficiently shows both facts which appellant contends it does not show; and in the second place, the questions which he seeks to make are not so presented by the record as to be available here. Following the title of the cause, which is as follows,

STATE OF INDIANA
*v.*
JOHN COTTRELL,    No. 685.
GEORGE FORD,
JAMES T. FORD.

and other entries, there is this statement in the record: "And be it further remembered that afterward, to wit, on the 20th day of October, 1886, the same being the 9th judicial day of the October term of the Madison Circuit Court, * * the following proceedings were had in said cause, to wit: Come now the grand jury in charge of their bailiff, and all being present, they find, render and return as true bills of indictment, properly signed by David W. Wood, prosecuting attorney of the 24th judicial circuit, Indiana, and endorsed by William Roach, foreman of said grand jury, bills of indictment which are marked filed this 20th day of October, 1886, Charles A. Henderson, clerk, and numbered 681 to 686 inclusive; and said grand jury also recommended that B. Seward, now in jail, charged with assault and battery with intent to kill, be discharged. And the court, being well advised in the premises, orders said B. Seward to be released and discharged from the county jail, * * * and the grand jury retire for further deliberation."

Upon the same day, and without any question as to the proper return of the indictment, appellant, as shown by the

same entry of the court's proceedings, procured a change of venue of the cause from the county.

With the presumptions that are indulged in favor of the regularity of legal proceedings, the foregoing shows, in an entirely sufficient and satisfactory manner, that the indictment was returned into open court.

The certificate of the clerk of the Madison Circuit Court shows that he forwarded to the clerk of the Hamilton Circuit Court the proper transcript of the proceedings in the cause in the Madison Circuit Court, and, also, the original indictment and papers in the cause against appellant.

The record also shows that the clerk of the Hamilton Circuit Court filed the indictment in his office on the 9th day of November, 1886, and endorsed that filing on the back of the indictment.

A copy of the indictment thus forwarded and filed, and upon which appellant was tried, is set out in the record. Upon the back of it is the number 685, and the file-mark as of Oct. 20th, 1886, in open court, by the clerk of the Madison Circuit Court, etc.

The indictment, amongst other things, contains this : " The grand jury within and for the county of Madison and State of Indiana, duly and legally empanelled, charged and sworn to inquire into all felonies," etc.

It is well settled that this court will indulge all reasonable presumptions in favor of the regularity and validity of proceedings in the lower courts, and will not reverse a judgment unless the record affirmatively shows that material errors intervened in such proceedings. Indulging that presumption, and acting upon that rule, it must be held that it sufficiently appears from the record here that the indictment was found and returned by a legal and duly qualified grand jury.

The following, amongst other cases that might be cited, fully sustain our conclusions here, and thus far stated : *Holloway* v. *State,* 53 Ind. 554 ; *Bailey* v. *State,* 39 Ind. 438 ; *Willey* v. *State,* 46 Ind. 363 ; *Long* v. *State,* 46 Ind. 582 ;

*Powers* v. *State*, 87 Ind. 144; *Stout* v. *State*, 93 Ind. 150; *Henning* v. *State*, 106 Ind. 386; *Epps* v. *State*, 102 Ind. 539; *Cline* v. *Lindsey*, 110 Ind. 337.

In some of our cases, especially in some of the earlier cases, it was held that a motion to quash an indictment, or a motion in arrest of judgment, should be sustained where the record does not show the return of the indictment into open court by a competent grand jury, duly empanelled. But in the later, and, we think, the better considered cases, it has been held that a motion to quash or a motion in arrest of judgment reaches the indictment, and nothing more, and that if the defendant seeks to make any question as to the qualification of the grand jury, or any member of the panel, or any question as to whether the grand jury was properly empanelled, or as to whether the indictment was properly returned into open court, he must do so by a proper plea, and that he can not reach those questions by a motion to quash the indictment or in arrest of judgment. *Padgett* v. *State*, 103 Ind. 550; *Mathis* v. *State*, 94 Ind. 562; *Wills* v. *State*, 69 Ind. 286. See, also, *Willey* v. *State*, *supra*; *Bell* v. *State*, 42 Ind. 335, and cases there cited.

Our statute provides that no indictment shall be deemed invalid, or quashed, for certain defects, amongst which is, for an omission to allege that the grand jury were empanelled, sworn or charged. R. S. 1881, section 1756.

In section 1759, the causes for which an indictment may be quashed are stated, but none of them refer to the empanelling or qualification of the grand jury, or the returning of the indictment into court.

The statute creating and defining the crime of arson provides that "Whoever wilfully and maliciously burns or attempts to burn any dwelling-house or other building, finished or unfinished, occupied or unoccupied, whether the building be used or intended for a dwelling-house or for any other purpose, * * * being the property of another, * * * is guilty of arson," etc.

The indictment charges the burning of a "certain mill-house, being then and there of the value of ten thousand dollars, and being then and there the personal property of other persons, to wit, the property of James R. Woodward and William Woodward."

It is contended by appellant, that the description of the property burned as a "mill-house" is not sufficiently certain, and that the indictment should have been quashed for uncertainty.

While the indictment is not so certain in the description of the property burned as it might have been made, we do not think that the uncertainty is such as would justify the court in quashing it.

In passing upon indictments, the courts of this State are to keep in view our statutes which are intended to dispense with many of the technical rules of the common law in criminal procedure.

Section 1755 provides, amongst other things, that an indictment is sufficient if the offence is clearly set forth in plain and concise language, and with such a degree of certainty that the court may pronounce judgment, upon a conviction, according to the right of the case.

Section 1756 provides that an indictment shall not be quashed for certain defects specified, amongst which is, "For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

"Mill-house" is not the most happy description of a building enclosing mill machinery, or used for milling purposes, but any one understands from that description that such a building is meant. The word "house" clearly means a building, in the ordinary use of the word, and such building or house is not necessarily the habitation of man or beast. There are slaughter-houses, packing-houses, smoke-houses, etc., indicating houses in which animals are slaughtered, meats packed and smoked, etc. So, a "mill-house," we

Ford v. The State.

think, would readily be understood to be a building or house used for milling purposes. See *Dugle* v. *State*, 100 Ind. 259.

A "mill-house" may, or it may not, be personal property. The statement in the indictment that the "mill-house" is the personal property of Woodward is a conclusion of law, rather than the statement of a fact, and, for that reason, may be regarded as surplusage, not affecting the indictment one way or the other. Section 1756, *supra; State* v. *McDonald*, 106 Ind. 233. And even though the property, the mill-house, may have been shown by the evidence, as contended by appellant, to be real estate, that did not constitute a fatal variance. Nor is it a fatal variance that the evidence shows that the property burned was a grist-mill or mill building. The building was a mill-house, as well as a grist-mill or mill building.

Longacker, one of the State's witnesses, having testified that in the fall of 1884 he had conversations with James T. Ford, one of the parties jointly indicted with appellant, was allowed to give the same over appellant's objection. The witness stated, in substance, that on one occasion, when he and James T. were standing in front of the mill of James Ford, father of James T. and uncle of appellant, and in a conversation about the Woodward mill having all the custom, James T. said that that mill would not always be in the way. And in another conversation about the same time, in the engine-house of his father's mill, where the witness was at work as engineer, James T. asked him what effect the burning of the mill would have on the engine and machinery.

Hart, another of the State's witnesses, having also testified that he had a conversation with James T. Ford near a year prior to the burning of the Woodward mill, was allowed to give it, over appellant's objection. The witness stated, in substance, that he was working at the Ford mill; that on one occasion James T., after a negotiation for a load of wheat, went into the mill where the witness was, and, with an oath,

declared that he would stop the Woodwards buying wheat,. and that their mill would be in ashes inside of a year.

It will be observed that the conversations detailed by Longacker occurred near two years prior to the burning of the Woodward mill, and that detailed by Hart about one year prior to that burning.

It will be observed, also, that the statements by James T., as detailed by the witnesses, consist of individual inquiries and threats. Neither appellant nor Cottrell, jointly indicted with him and James T., was present at the conversations between the witnesses and James T. It is not claimed that Cottrell at any time had any conversation or communication of any sort with James T. in relation to the burning of the Woodward mill. Nor is it claimed that he ever heard of the conversations and threats detailed by the witnesses, or that he had any knowledge of any purpose or desire on the part. of James T., as connected with the Woodward mill, if he had any, except as he claims to have heard from appellant a few days before the burning of the mill in August, 1886. His first acquaintance with appellant was in the winter or spring preceding the burning of the mill.

Appellant returned to the neighborhood to live about April, 1886. It is conceded, or at least not questioned, that for several years prior to that time he had been away, following his occupation as railroad engineer.

It is claimed on the one hand by the State, that Cottrell's testimony is corroborated, and on the other hand by appellant, that it is not only not corroborated, but at many points weakened and destroyed. For the present purpose it is sufficient to say that, whether corroborated or not, Cottrell is the one witness upon whose testimony appellant's conviction rests. Cottrell alone burned the mill. On the night it was burned James T. Ford was at home with his family, and appellant was in Indianapolis.

Cottrell's statement is, that appellant induced and hired him to burn the mill, saying, in some of the first interviews,.

that if he would do so, he, appellant, would procure for him fifty dollars from James T. Ford; that, shortly afterwards, appellant informed him that he could not get so much as fifty dollars, and gave him a small sum, and promised to take him to Texas and procure for him a position on a railroad.

The conversations detailed by Cottrell as having taken place between him and appellant were had but a few days prior to the burning of the mill. According to his statements, he had no thought of burning the mill prior to the propositions thus made by appellant. If then, prior to that time, there was any scheme to burn the mill, Cottrell, according to his statement, was not connected with it.

As we have said, there is no claim that appellant was present when the statements and threats, as detailed by Longacker and Hart, were made by James T. Ford.

There is no evidence of any concert of action on the part of appellant and James T. Ford, nor of any agreement or conspiracy between them to burn the mill, or to procure it to be burned, at the time, or at all near the time, when the statements and threats were made by James T. Ford, as detailed by Longacker and Hart.

As we understand the argument of counsel for the State, it is not claimed that the evidence in any way connects appellant with any scheme to burn the mill at the time those statements were made by James T. Ford, or in any way shows that, at that time, he had any knowledge of any such scheme, if any existed.

It may be conceded, that, by the testimony of Cottrell, it is shown, *prima facie*, as against appellant, that some time prior to the burning of the mill, but months, and in one instance more than a year, subsequent to the statements by James T., as detailed by the witnesses, appellant and James T. confederated together to burn or to procure the burning of the mill. With that concession, the question is, are those declarations by James T., in the absence of appellant, competent evidence against him upon his separate trial?

It is settled, that when a conspiracy is once established, and until the consummation of the object in view, if the conspiracy last that long, every act and declaration of one conspirator in pursuance of the original concerted plan, and in reference to and in furtherance of the common object, even in the absence of the others, is, in contemplation of law, the act and declaration of them all, and is, therefore, original evidence against each. All are deemed to assent to or commend what is said or done by any one in furtherance of the common object.

It has been said, and correctly, too, that the principle on which the acts and declarations of other conspirators, and acts done at different times, are admitted in evidence against the persons prosecuted is, that, by the act of conspiring together, the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design, thus rendering whatever is done or said by any one, in furtherance of that design, a part of the *res gestœ*, and, therefore, the act of all; that it is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners, as against the partnership. *Nevill* v. *State*, 60 Ind. 308; *Hogue* v. *McClintock*, 76 Ind. 205; *Wiley* v. *State*, 52 Ind. 475; *Smith* v. *Freeman*, 71 Ind. 85; *Caldwell* v. *Williams*, 1 Ind. 405; Wharton Crim. Ev., section 698; 1 Bishop Crim. Proc., section 1248; Roscoe Crim. Ev. 414; Abbott Trial Ev. 190; 3 Greenl. Ev., section 94; 1 Greenl. Ev., section 111; *State* v. *Larkin*, 49 N. H. 39.

The evidence of the declarations of James T. Ford does not come within the rule as above stated, nor within the spirit of it, and we think should not have been admitted. In the first place, the gravamen of the offence charged is not a conspiracy. See *Strout* v. *Packard*, 76 Maine, 148; *State* v. *Larkin*, *supra.* In the next place, some of the declarations were made months, and some of them more than a year, before it is

claimed that appellant had anything to do with any scheme to burn the mill.

At the time they were made there was no conspiracy, unless it be said that James T. conspired with himself. And, further, the declarations were but mere threats. They were not so connected with the burning of the mill in time and character as properly to be said to be a part of the *res gestœ*.

Without committing this court to all that is said in those cases, we cite in this connection *Fouts* v. *State*, 7 Ohio St. 471 ; *Wilson* v. *People*, 94 Ill. 299; *Cox* v. *State*, 8 Tex. App. 254 (303) ; Bump Fraudulent Conveyances, 583.

If it be said that such evidence is competent for the purpose of proving a conspiracy, it may be answered that whatever weight it might have in that regard here, it would also have in connecting appellant with that conspiracy, because there is no claim that there was any conspiracy except as between him and James T. Ford. It is settled everywhere, that one person can not be connected with a conspiracy by the declarations of another, and that declarations are incompetent for that purpose. *Wolfe* v. *Pugh*, 101 Ind. 293 (306); Abbott Trial Ev. 191; *United States* v. *McKee*, 3 Cent. L. J. 95; *United States* v. *Babcock*, 3 Cent. L. J. 143; 2 Whart. Ev., sections 1183, 1206.

James Woodward, one of the owners of the property burned, was called as a witness for the State, and, over appellant's objection, was allowed to state that in the spring of 1886, and prior thereto, Emanuel Hart notified him of threats made by James T. Ford.

We know of no principle of the law that will sanction the admission of that evidence. It was clearly erroneous.

James Ford, an uncle of appellant, and father of James T. Ford, jointly indicted with appellant, was a witness for appellant. On cross-examination counsel for the State asked him, in substance, if he had not, in a conversation with Peter Miller at his mill, two years prior to the trial, in speaking of the competition between his mill and the Woodward mill,

said that the Woodward mill would not do much harm; that in two years it would sell for old iron. And, further, if he did not, in a conversation at his mill shortly after it was started in business, and in the presence of Walter Gross, say that the Woodward boys would be glad to sell their mill for old iron inside of two years.

Over appellant's objections and exceptions, the questions were allowed, and the witness directed to answer. He answered each in the negative. The State called Miller and Gross, and, over appellant's objection, they were allowed to, and did, testify that the witness, James Ford, made the statements which the questions to him indicate, and which he denied having made.

The general rule, as approved by this court and the authorities elsewhere, is, that when a witness is cross-examined on a matter collateral to the issues, his answer can not be subsequently contradicted by the party putting the question.

The test of whether a fact inquired of on cross-examination is collateral, it has been said, is this: Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea? Wharton Crim. Ev., section 484; *Welch* v. *State*, 104 Ind. 347. See, also, *City of South Bend* v. *Hardy*, 98 Ind. 577.

The rule and test above stated, however, have not been so applied as to exclude a cross-examination as to the interest of the witness in the case, or his hostility to one of the parties. If, on such cross-examination, the witness denies such interest or hostility, he may be contradicted by evidence of his own statements, or other implicative acts. Wharton Crim. Ev., section 484; *Scott* v. *State*, 64 Ind. 400; *Johnson* v. *Wiley*, 74 Ind. 233. See, also, *Stone* v. *State, ex rel.*, 97 Ind. 345; Roscoe Crim. Ev. 102; *Starks* v. *People*, 5 Denio, 106; *Newton* v. *Harris*, 6 N. Y. 345.

In the case before us, the Woodwards are not parties to the prosecution, but we think that, as the owners of the property burned, they have such a relation to the prosecu-

Gregory, Administrator, *v.* The C., C., C. and I. Railroad Company.

tion as to bring the case within the spirit of the rule and render the cross-examination of the witness James Ford and the testimony of Miller and Gross competent. That testimony tends to show that the witness James Ford was hostile to the Woodwards, and thus, within the spirit of the rule, tends to show that he is not an impartial witness. How much weight should be attached to that testimony is another question, and one for the jury. We are dealing with its competency simply, and not with its weight.

It is claimed by counsel for the State, that whatever errors may have intervened are harmless ones, and that, therefore, the judgment should be affirmed. An examination of the questions, and of the record, has led us to a different conclusion.

Questions other than those here decided are discussed by counsel. We have decided those which, in our judgment, may arise again upon a re-trial of the cause.

The judgment is reversed, and the cause remanded, with instructions to the court below to grant a new trial. The clerk will make the proper order for the return of appellant to the custody of the sheriff of Hamilton county.

Filed Nov. 29, 1887.