## NEELD v. THE STATE.

[No. 3,511.   Filed November 27, 1900.]

GAMING.—*Evidence.*—*Criminal Law.*—In a prosecution for keeping a room to be used and occupied for gaming it was shown that the room was located over a saloon, the furniture consisting of a round table with a muslin cover and a drawer, chairs, carpet and a lounge. The witnesses, two police officers, went to the room about two o'clock on Sunday morning and found seated around the table five or six men, some of whom were playing cards. Poker chips and money were lying on the table, most of the chips being in front of one of the men playing. Some chips were placed in the middle of the table, and when a game was played defendant would "chip" off into the drawer; that the "pot" went to the man that won. *Held,* that the evidence was sufficient to support a conviction. *pp. 604–607.*

APPEAL AND ERROR.—*Record.*—*Instructions.*—Instructions in a criminal cause can only be brought into the record by bill of exceptions. *p. 608.*

From the Monroe Circuit Court.   *Affirmed.*

*J. R. East, R. H. East* and *J. E. Kelly,* for appellant.

*W. L. Taylor,* Attorney-General, and *S. D. Clark,* for State.

WILEY, J.—Appellant was prosecuted before the mayor of the city of Bloomington for keeping a room to be used and occupied for gaming, and was convicted. From the judgment of conviction there rendered, he appealed to the court below, where he was tried by a jury and again convicted. His motions for a new trial and in arrest of judgment were each overruled, and the overruling of these motions are the only errors assigned. The first, second, and third reasons for a new trial may be considered together, as they rest upon the proposition that the verdict is contrary to the law and the evidence. The other reasons for a new trial rest upon the admission of certain evidence, upon overruling appellant's motion to strike out certain evidence, upon remarks made by the court during the trial in ruling

upon the admission and rejection of certain evidence, and upon the refusal of the court to give to the jury instruction number four tendered and requested by the appellant.

It is earnestly urged by appellant's counsel that there is no evidence in the record to support the verdict. In other words, counsel argue that there is a total failure of evidence. If the record shows that there is a total failure of evidence to support the material averments of the affidavit, then the verdict and judgment should not stand. As we have stated, two judicial tribunals have found appellant guilty as charged, and if there is any legitimate evidence in the record to support the result reached, we can not disturb the verdict on the evidence, for by so doing we would be weighing the evidence. This we can not do.

The evidence upon all material points in the case is almost identical with the evidence in the case of *Roberts* v. *State, ante,* 366, recently decided by this court. Briefly stated, the evidence discloses the following facts: That the room charged to have been kept by appellant for gaming was occupied by him as a tenant of one Ross; that the furniture in the room consisted of a round table with a muslin cover and a drawer, five or six chairs, a carpet and a lounge; the room in question was over a saloon; that the building containing the room was on the "levee" near the depot; that between 1 and 2 o'clock one Sunday morning, two police officers went to the building, went around in the alley through a side door and up a back stairway leading to the door of the room occupied by appellant; that they knocked at the door; that appellant unlocked the door and said "what's the matter?" That upon entering the room they found seated at and around the table five or six men; that when appellant came in with them he sat down at the table at what is called the "take off" drawer; that some of the men were playing cards; that in front of the men playing cards were piles of poker chips; that there was also money on the table; that there were thirty to fifty

poker chips on the table; that the chips were of different colors; that most of the chips were in front of one of the men playing; some chips were put in the middle of the table, and when a game was played, appellant would "chip off into the drawer;" that the "pot" went to the man that won; that one of the men who was playing cards was the proprietor of the saloon under the room occupied by Neeld; that these officers arrested all the men present, and started to jail with them, when one of the men who was playing cards escaped from them, and that the day after his arrest appellant gave up the room and ceased to occupy it.

On the part of appellant, evidence was introduced to the effect that he rented the room in question for an office; that he was an architect and contractor, and that he used it in which to draw plans, etc., for his work. There is not a word of evidence that there was in the room any instruments or appliances used by architects for drawing plans, etc., save a drawing-board stored away in a closet. It is also shown that on the night appellant and those with him were arrested, he had invited the men up to his room and that he went out and bought a lunch and took it up to the room and that they ate it. Appellant and two others who were with him testified that some of the men played seven-up there, and that they kept the count with poker chips; that the money on the table belonged to one of the men, Nicholson, who was playing cards, being the amount left out of a two dollar bill which he gave appellant with which to buy the lunch, and which he had neglected to put back in his pocket. Appellant testified that the men were not gambling; that he did not keep the room for gaming, and the poker chips used did not represent anything of value. The evidence also shows that Roberts and Strothers, the only witnesses who testified in behalf of appellant, except himself, were then under indictment and awaiting trial, charged with visiting a gambling house, being the same place that appellant is here charged with keeping. This is a succinct but

fair abstract of the evidence. It is upon this evidence that appellant asks a reversal on the ground that there is no evidence to establish his guilt. If this evidence does not establish the fact that the room kept by appellant was a place for gaming, then the judgment must be reversed.

As was said in *Roberts* v. *State, supra*, "It may be remarked that there is no direct evidence in the record to show that such place was a gambling house, or a place where gambling was permitted, and hence, if it was necessary to establish the fact by direct and positive evidence, the State has wholly failed. But such is not the law. It often occurs, in prosecutions for the violation of criminal statutes, that it is utterly impossible to establish the defendant's guilt by direct and positive evidence, and, if the State did not have resort to other means of proof, the guilty would go unpunished. In prosecutions for crime it is often necessary to establish guilt by circumstantial evidence. The word 'evidence,' as used in judicial language, signifies all the means by which the existence or non-existence of disputed facts is established. 1 Greenl. on Ev. (15th ed.) §13." Circumstantial evidence is one of the means of establishing a fact in dispute.

It follows, therefore, that if the record establishes the fact that the room kept by appellant was kept as a place for gaming, it must be admitted that it is established by circumstantial evidence. Under the authority of the Roberts case, *supra,* and the many authorities there cited, we are clearly of the opinion that the jury had abundant evidence from which they were fully warranted in inferring that the appellant kept the room for the purpose charged in the affidavit. Every material fact shown by the evidence forms a chain of circumstances from which not a link is missing, which leads the fair and unprejudiced mind to the conclusion reached by the jury. As was held in the Roberts case, *supra,* and supported by the authorities there cited, it is a question for the jury under the evidence before them to de-

termine whether or not a particular room was used for gambling, and that they may so find from circumstances indicating that gambling was going on in the room.

The evidence on the part of appellant does not appeal to the mind and conscience of a jury or court with sufficient force to override the reasonable and legitimate inference to be drawn from the damaging facts and circumstances against him, but carries with it an air of suspicion that casts upon it grave doubt and unbelief. The jury were the exclusive judges of the evidence; they saw the witnesses face to face; they observed their manner and demeanor while on the witness stand; they had the right, and doubtless did consider the interest they had in the result of the trial, and though appellant and his two witnesses, Strothers and Roberts, testified that there was no gambling done there, and appellant testified that the room was not kept for gaming, yet the jury had a right to disbelieve their evidence, if they thought from all the facts in the case and the circumstances disclosed before them that they were unworthy of belief. And we have no doubt from the result reached that the jury took this view of their evidence. As to the evidence of Strothers and Roberts, there were certainly some well founded reasons why the jury might at least scrutinize their evidence closely. They were then under indictment and awaiting trial for visiting the very room in question, as being a gaming place, and an acquittal of appellant for keeping such a place would have been greatly to their interest and advantage in their own trials for visiting such place. These facts were all before the jury, and they had a right to, and doubtless did, consider them in determining the credibility of the witnesses and the weight they gave their evidence. We have read all the evidence in the record, and after carefully considering it, we think the facts disclosed are sufficient to support the verdict. It follows, therefore, that we can not disturb the verdict on the evidence.

Appellant complains of the court's action in refusing to

give instruction number four, tendered by him. The instructions are not brought into the record by bill of exceptions, and hence are not before us for any purpose. In a criminal case, the only way by which instructions given or refused can be made a part of the record is by embodying them in a bill of exceptions. *Delhaney* v. *State,* 115 Ind. 499; *Leverich* v. *State,* 105 Ind. 277; *Brown* v. *State,* 111 Ind. 441; *Ford* v. *State,* 112 Ind. 373. In their brief, counsel for appellant say that a bill of exceptions embodying the instructions was tendered to the trial judge with a request that he sign it, but that he refused for a reason stated. With this we have nothing to do. The instructions are not in the record, and as to whether the trial judge did or did not do his duty is not before us.

Other questions discussed by counsel for appellant, under the motion for a new trial, relate to the admission and rejection of evidence, and some remarks made by the court relating thereto. We do not deem it necessary to take up in their order these several questions and to discuss them. We have considered all of them and have reached the conclusion that in such rulings, and the remarks of the trial judge, no errors were committed that were prejudicial to appellant.

As to the error assigned in overruling appellant's motion in arrest of judgment, counsel admit in their brief that the affidavit is good as against a motion in arrest.

Judgment affirmed.