## BAKER *v.* THE STATE OF INDIANA.

[No. 21,658.   Filed November 29, 1910.]

1. APPEAL.—*Briefs.—Time for Filing in Criminal Cases.—Rules.*—Under Supreme Court rule twenty-one, appellees in criminal appeals have 120 days from the date of submission within which to file their briefs.   p. 709.

2. BILLS OF EXCEPTIONS.—*Filing.—How Shown.—Criminal Law.—Appeal.*—Where the transcript, on appeal, in a criminal case shows that the bills of exceptions contained therein were filed in open court, they are sufficiently shown to have been "filed with the clerk," as required by §2163 Burns 1908, Acts 1905 p. 584, §287.   p. 709.

3. CRIMINAL LAW.—*Instructions.—Consideration of Impeaching Evidence.—Homicide.*—An instruction in a homicide case, that the numerous declarations concerning the crime charged, made by defendant's witnesses in his absence after the commission of the crime, and shown on cross-examination, cannot be considered as showing that the defendant committed the crime, but may be considered in determining the interest, prejudice, or feeling of such witnesses and the weight to be given to their testimony, is not prejudicial to defendant.   p. 709.

4. CRIMINAL LAW.—*Instructions.—Duplication.*—It is not erroneous to refuse to duplicate instructions.   p. 710.

5. CRIMINAL LAW.—*Evidence.—Declarations of Conspirators.*—Declarations made by conspirators in the absence of defendant, after the consummation of the robbery and homicide charged, are not admissible against any one but the persons making them.   p. 711.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Prosecution by The State of Indiana against John Baker. From a judgment of conviction, defendant appeals. *Reversed.*

*R. K. Erwin, Fred H. Bowers, Milo Feightner* and *John Baker,* for appellant.

*James Bingham,* Attorney-General, *Albert E. Thomas.* Prosecuting Attorney, *Barrett & Morris, A. G. Cavins, E. M. White* and *W. H. Thompson,* for the State.

HADLEY, J.—Appellant was convicted of involuntary manslaughter on an indictment charging him (1) with the

premeditated murder of Columbus Croy, and (2) with the felonious killing of Columbus Croy while committing a burglary.

The first contention of his counsel is that the State was improperly allowed to file its brief in this appeal, which was received by the clerk and placed upon the files 1. 100 days after the submission of the cause. Appellant's counsel labor under a misapprehension. On June 20, 1901, an amendment to rule twenty-one was made and filed, in these words: "Except that in criminal cases such brief [by appellee] shall be filed within 120 days after submission." Under this amendment the State's brief was timely filed.

The Attorney-General insists that the three several bills of exceptions—respectively containing instructions given, instructions requested and refused, and the motion for 2. a new trial and affidavits in support thereof—are not in the record for want of proper identification. It is shown by the record that each of said bills, after being properly signed by the judge, was timely filed in open court. The Attorney-General seeks to maintain that a filing in open court is not a compliance with §2163 Burns 1908, Acts 1905 p. 584, §287, which requires all bills of exceptions in criminal cases to be filed with the clerk. We cannot accept his logic. The clerk is the custodian of all files of the court, and a filing in open court is, in effect, a placing of the file in the manual possession of the clerk, for the court, which is a substantial compliance with the statute.

Complaint is made of the giving to the jury of instruction thirty-two, in which the court, after naming certain witnesses that had been called by defendant, and 3. who had been questioned on cross-examination as to whether they had made numerous statements concerning matters in relation to the crime, at various times after the death of Columbus Croy, and at times and places

when defendant was not present, said: "You must bear in mind that such statements, if any have been shown, are not binding on defendant, and they are not to be taken or considered by you as showing that the defendant committed the crime charged, but they are to be considered by you in determining whether these witnesses have any interest, bias, prejudice, feeling or knowledge of the crime, and to aid you in determining the weight or credit to be given to their testimony, and for no other purpose." The objection made to the instruction is that the singling out of a class of witnesses, and calling attention to the class of facts testified about in cross-examination tended to cast suspicion and discredit upon such witnesses and their testimony. We think counsel wholly misconceive the object and natural effect of such an instruction. Clearly the court was but calling attention to the particular witnesses and their testimony for the purpose of properly instructing the jury against an unwarranted application of testimony to the injury of defendant. The limitations stated by the court were correct and discreet, and for the benefit of defendant, for which he has no ground of complaint.

Complaint is likewise made of the refusal of the court to give to the jury instructions twenty-five and twenty-six.

4. These propositions set forth divers facts appearing in evidence, referring to the character of the wound found upon the decedent, the position of the body when found, with relation to the saloon that it is claimed by the State was being burglarized at the time of the homicide, and from which or near which it is claimed the fatal shot was fired, the condition of the clothing on the body, from all of which attention is called to the possibility of accident and the impossibility of committing the crime in the manner contended for by the State, and which concluded with the statement that if such facts created in the minds of the jury a reasonable doubt as to any material point, it was their duty to give the benefit of such doubt

to the defendant and acquit him. We think there was no error in the refusal of the court to give these last-named instructions, because their substance was fully covered by instructions twenty-one, twenty-two, twenty-three and thirty-eight, given by the court of its own motion.

Instruction twenty-one advised the jury that circumstantial evidence alone, in order to be sufficient for the conviction of defendant, would have to be so plain and conclusive as not only to convince each juror of defendant's guilt beyond a reasonable doubt, but it would have to go a step further, and also exclude the defendant's contention that he was at home when the crime was committed. In other words, the circumstances proved in the case would have to show defendant's guilt, and also show that he was not at home when the crime was committed, and the circumstances would have to overcome every other claim or theory of innocence presented by defendant before the jury could rely on them for a conviction.

Instructions twenty-two, twenty-three and thirty-eight are in the same vein, and fully present the rule of reasonable doubt, in a manner eminently fair to defendant. There was no error in refusing to give the instructions requested.

One LaDuke, a witness for the State, testified, in substance, that John Stout, Herman Miller, the defendant and said witness, on invitation of defendant, shortly after midnight of June 7, 1907, went with him to the saloon of Joe Faulkner, in the village of Woodburn, to get a drink. The men had been drinking heavily at other places. They approached the rear of the Faulkner saloon through a muddy alley. It was very dark. Defendant Baker led, Stout next, Miller next, and witness last. As they neared the rear of the saloon defendant picked up something, and with it pried at the back door. Failing to effect an entrance he said: "Boys, let us go around to the side window," and so doing defendant struck and broke

the window, then reached in, raised the window and crawled in. After getting in he put his head and shoulders out of the window and requested Stout, who was standing nearest the front and sidewalk, to watch the front, and requested Miller and the witness to watch the alley and rear. Stout thereupon stepped towards the front. The witness and Miller gave attention to the rear, and soon heard some one coming rapidly down the alley, and heard Stout, who was standing near the front of the saloon, say: "Stand back, stand back there, I say," and then he fired two shots towards the sidewalk. It was further shown that Croy's dead body, pierced by bullets, was found a few feet south of the saloon on the sidewalk. With this evidence of a conspiracy by the four persons named to commit the crime of burglary, the court upon the trial permitted the State, over the objection of defendant, to ask, and said John Stout to answer the following questions, concerning a dialogue between him and Herman Miller, two of the alleged conspirators, in the presence and hearing of Clarence Omo, in the absence of defendant and seven months after the complete consummation of the alleged conspiracy and death of Croy: "Q. Are you acquainted with Clarence Omo, otherwise known as Hafley? A. Yes, sir. Q. I will ask you if, two weeks before your arrest, at Bogenschutz's saloon, across from the court-house, on Main street, north, you saw Clarence Omo in that saloon at 11 or 11:30 o'clock. A. No, sir. Q. Ten o'clock? A. No, sir; I did not see him at all. Q. Is it not a fact that just before you stepped out from the rear convenience part of that saloon, just before you met him, you did say to Herman Miller, jointly charged with you in the murder of Columbus Croy, 'Forget it, Miller,' and didn't Miller respond to you, 'We did it, and they can't get us'? A. No, sir; I did not make any such statement. Never was in Bogenschutz's saloon with Miller. Q. And at that time did you not state to Herman Miller, 'Forget it, Miller,' and did not he respond, 'We fixed him, all

right'? A. No, sir; I did not make any such statement. Q. You may state whether you did not, at the time and place mentioned, say to Clarence Omo, 'Shake hands,' and ask him what he was doing at Fort Wayne. A. I never saw Clarence Omo at the place. Q. And if you and Herman Miller were not both at that time intoxicated. A. No, sir. Q. And just before you met Clarence Omo in the rear convenience portion of that saloon, did you not say to Herman Miller, 'Forget it, Miller,' and did not Herman Miller then say to you, 'Well, it is done; they cannot get us. We fixed him, all right,' or words to that effect? A. No, sir; I did not.''

In rebuttal, over a like objection of defendant, the court permitted Clarence Omo to testify affirmatively to the dialogue between Stout and Miller, as heretofore set out. Appellant's counsel earnestly contend that the admission of this evidence was prejudicial error, and we are led to agree with them. With respect to the declarations, or confessions, of co-conspirators, the rule is very fairly and concisely stated in 4 Elliott, Evidence §§2943, 2944, as follows: ''The authorities go to the proposition that the acts or statements competent to be proved must have been done or made in the prosecution of the criminal conspiracy, or in the furtherance of the object or common design of the conspiracy. * * * So it has been held that the admissibility of the acts and declarations of a conspirator are proper only when they are either in themselves acts or accompany and explain acts for which others are responsible; but that they are not admissible when in the nature of narratives, descriptions, or subsequent confessions. * * * There is another limitation on the rule admitting the declarations of a co-conspirator as evidence. This limitation is to the effect that declarations made by one of the conspirators after the conspiracy has been effected and the crime perpetrated *. * * are not admissible in evidence against any except the persons making them.''

Mr. Greenleaf states it thus: "Care must be taken that the acts and declarations thus admitted, be those only which were made and done during the pendency of the criminal enterprise, and in furtherance of its objects. If they took place at a subsequent period, and are, therefore, merely narrative of past occurrences, they are, as we have just seen, to be rejected." 1 Greenleaf, Evidence (16th ed.) §184a; and see cases cited in note. To the same effect see Moore v. Shields (1889), 121 Ind. 267; Ford v. State (1887), 112 Ind. 373, 382; Card v. State (1887), 109 Ind. 415. Mr. Justice Mitchell, in the case of Moore v. Shields, supra, said on the same subject: "If the conspiracy has not yet been formed, or if it has ended by the consummation of the criminal design, mere admissions or narrations of what has taken place, which had no tendency to promote the common design, are not admissible against those who were not present when the admissions were made."

The testimony was evidently admitted upon the assumption or theory that the statements between Stout and Miller, made seven months after the burglary in question and the homicide of Croy, related to those occurrences, and could have no other significance than a mere mention or statement of these past events. But what was there in the statements or the surroundings to warrant such assumption? No mention was made of any particular occurrence, or act, or time or place, or that any one other than the two in conversation had any participation or connection with the act alluded to. So far as appears, the reference might have been to some matter wholly foreign to the killing of Croy, and to some act that was neither infamous nor unlawful. The uncertainty of such loose statements illustrates the wisdom of Mr. Greenleaf's text before quoted, that care must be taken in the admission of such testimony. It is very clear that the testimony should have been excluded, and is of a character to make it quite impossible for this court to say it was not harmful.

Appellant makes the point that he was tried and acquitted by failure of the jury to make any finding under the second count of the indictment, which charges him with the killing of Croy, while engaged in the commission of an unlawful act, and was found guilty of involuntary manslaughter under the first count, which charges him with the wilful killing of Croy, and insists that there is a fatal variance between the charge and the proof. This question, and others arising under the motion for a new trial, and chiefly relating to the evidence, we do not consider, for the reason that they are of a character to make it improbable that they will arise again upon a retrial.

Judgment reversed, with instructions to grant appellant a new trial.