## Goodwin et ux. v. Hoberman et al.

*I. Finkelstein,* for plaintiffs.

*Raymond A. White* and *Samuel Feldman,* for defendants.

GORDON, JR., J.—This is a bill in equity, brought by the plaintiffs, William F. Goodwin and Emma A., his wife, to restrain the defendants, Emma L. Walsh, Harry R. Hoberman and Joseph B. Hoberman, from operating a slaughter-house for chickens at No. 4929 North Fifth Street, in the City of Philadelphia, of which the defendant Walsh is the owner, and the defendants, Harry R. and Joseph B. Hoberman, trading as American Poultry Stores Company, are the lessees.

The bill avers that the plaintiffs own and occupy No. 4941 North Fifth Street, Philadelphia; that both they and the defendant Walsh, together with other property owners in the same block, derive their titles from the same common owner; that the deeds to all the properties in the neighborhood, including that of the defendant Walsh, contain the "express condition, restriction and agreement that . . . neither the said [grantee] nor his heirs or assigns, shall or will at any time hereafter, build, use or occupy, or cause or permit to be erected, built, used or occupied upon the above described premises, or any part thereof, any . . . slaughter-house . . . ;" and that the defendants Hoberman have, since November, 1928, in violation of the aforesaid restriction, conducted, and intend to continue to conduct, on said premises a slaughter-house for the purpose of slaughtering chickens thereon.

The bill makes certain other averments respecting the fears of the plaintiffs that the conduct of the defendants' business of selling and slaughtering chickens will become a nuisance in fact; but as they are irrelevant to the issue before us, which is confined to the alleged violation of the restriction indicated, they will not be here considered.

The bill then prays for an injunction to restrain the defendants from slaughtering or permitting chickens to be slaughtered upon the premises in question.

The defendants' answers admit the averments of the bill above recited and that the premises are used for the sale and distribution of live poultry and the killing of chickens according to the Mosaic law. The defendants narrowly contend in their answers, however, that they are not violating the aforesaid restriction because no "animals" are slaughtered on the premises, but only poultry and such fowl as are bought by the public from them and for slaughtering which a fee is paid the *shocket* or slaughterer.

The testimony presented by the parties was substantially free from contradiction, and the single issue thus raised by the pleadings is whether the place for the sale and slaughter of chickens, which the defendants admit they conduct on the premises, is within the restriction already stated.

From the evidence, we make the following

### Findings of fact.

1. The plaintiffs, William F. Goodwin and Emma A. Goodwin, are the owners of, and reside in, premises No. 4941 North Fifth Street, in the City of Philadelphia, situate on the east side of Fifth Street, between Rockland and Ruscomb Streets, title to which they obtained November 4, 1918.

2. The defendant, Emma L. Walsh, has, since January 19, 1922, been the owner of premises No. 4929 North Fifth Street, Philadelphia, situated on the east side of Fifth Street, between Rockland and Ruscomb Streets, in the City of Philadelphia.

3. The defendants, Harry R. and Joseph B. Hoberman, trading as American Poultry Stores Company, are now, and have been since September, 1928, tenants of the said defendant Emma L. Walsh, in said premises No. 4929 North Fifth Street, Philadelphia.

4. The plaintiffs and the defendant, Emma L. Walsh, acquired their respective properties under and subject to a restriction forbidding them to "build, use or occupy, or cause or permit to be erected, built, used or occupied upon the above described premises, or any part thereof, any tannery, slaughter-house, skin-dressing or bone-boiling establishment, glue, soap, candle, starch, varnish or lamp black manufactory or building for other offensive use, purpose or occupation."

5. This restriction was, in September, 1928, and still is, in full force and effect.

6. The defendants, Harry R. and Joseph B. Hoberman, are conducting and intend to continue to conduct on said premises the business of a retail live poultry store and slaughter-house, in which upwards of 800 chickens per week are sold to the public and slaughtered.

7. The slaughtering of chickens by the defendants, Harry R. and Joseph B. Hoberman, upon said premises, is in violation of the restriction upon said premises, and constitutes the use by the defendants of said premises as a slaughter-house.

8. Previous to commencing the business at premises No. 4929 North Fifth Street, the defendants were notified that the conduct of a slaughter-house for the slaughter of poultry at said place was a violation of said restriction, and would be objected to by the plaintiffs.

9. The plaintiffs began this action within approximately thirty days after the defendants started slaughtering poultry on the premises, and have not, therefore, been guilty of laches.

### Discussion.

It is unnecessary to discuss the facts of this case at length. It is admitted by the defendants Hoberman, that they are engaged in the business of selling

and killing fowl upon the property in question, which they have altered and reconstructed in such a manner as to adapt it to that purpose, and that they have provided people whose exclusive employment is to kill fowl at the request of their purchasers. The business has grown to such an extent that an average of 800 chickens per week are slaughtered on the premises. If this killing of chickens for the public is a slaughtering of animals for the market, then, obviously, this business falls within the restriction, and the prayer of the bill must be granted. A slaughter-house is a house in which animals are slaughtered: Ford v. State (Ind.), 14 N. E. 241 244; and in 3 C. J. 16, we find "domestic fowls generally, doves, chickens, turkeys," etc., are included under the definition of animals. It would, therefore, seem to follow that the defendants are violating the restriction referred to, and the plaintiffs are entitled to the relief which they seek.

The defendants, however, ask us to draw a distinction between the killing of fowl and four-footed animals, contending that the former is not within the restriction. This contention is untenable. No such distinction appears in the language used, nor is there anything in the nature of the business which would justify its being drawn. Those objectionable features of the business of slaughter-houses, which determine their character and render them nuisances per se in certain neighborhoods, are as much present in the slaughtering of the feathered family as of the four-footed beasts. The accumulations of offal, the odors which emanate from dead matter, and all the problems of disposition of such waste, are present in both activities. In the case of the larger beasts, the likelihood of an intensified offensiveness may generally be greater than in the case of fowl. On the other hand, the comparative volumes of business transacted may result in a reversal of this condition. In their offensive characteristics, however, there is no fundamental difference between the slaughtering of chickens and of beasts. In giving effect to a restriction which is clear and comprehensive in its language, the court is not at liberty to decline to enforce it fully merely because the degree of the resulting nuisance might not be so great when one, rather than another, kind of animal is killed, or to speculate upon the possibility that a particular slaughterer might minimize, or even eliminate, the objectionable features of such a business. Such businesses, however well conducted, are a constant menace to the peaceful and comfortable enjoyment of neighboring properties, especially in a residential section, and the purpose of such a restriction is, by an absolute bar to the business, to insure against the possibility of such annoyances being brought into the locality to be protected. The distinction which the defendants seek to draw is, therefore, unsound, in view of the unqualified nature of the restriction.

From the foregoing discussion, it follows that the slaughter-house conducted by the defendants upon the property in question falls within the restriction against such use of the premises, so that the plaintiffs' bill should be sustained and the defendants restrained from conducting and maintaining the said slaughter-house.

We, therefore, reach the following

### Conclusions of law.

1. The restriction against a slaughter-house contained in the defendant Walsh's deed to the property in question is still in full force and effect and has not been waived or released.

2. The slaughtering of poultry for the market as conducted and intended to be conducted at premises No. 4929 North Fifth Street, Philadelphia, is prohibited by the restriction in the deed of the defendant Walsh.

3. The defendants are conducting, and intend to conduct, a slaughter-house at premises No. 4929 North Fifth Street, Philadelphia.

4. The prayer of the bill should be granted and the defendants, their servants, agents and employees, enjoined from conducting the slaughter-house complained of on premises No. 4929 North Fifth Street, Philadelphia, or permitting the same to be conducted thereon.

5. The defendants should pay the costs of this proceeding.

The court, therefore, enters the following

*Decree.*

And now, to wit, March 14, 1929, this cause having come on to be heard at this term of court upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That the bill be sustained and the defendants, their servants, agents and employees are perpetually enjoined and restrained from conducting, or permitting to be conducted, a slaughter-house for the killing of fowl on premises No. 4929 North Fifth Street, Philadelphia.

2. The defendants shall pay the costs of this proceeding.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.