JAMES E. SMITH *v.* STATE OF INDIANA.

[No. 1-773A128. Filed February 27, 1974.]

*Harry W. Hanson,* of Washington, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen M. Sherman,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant James E. Smith (Smith) was found guilty by jury of conspiracy to commit a felony, to-wit: second degree burglary. Smith presents three issues for review:

1.   Whether the court erred in admitting testimony concerning admissions made by a co-conspirator who was in the custody of the police.

2.   Whether the court erred in permitting a police officer to testify that certain pry marks at a door were "fresh".

3.   Whether the court erred in admitting certain testimony of the defendant on cross-examination over his objection that it was irrelevant and immaterial.

Resolution of the above requires a recitation of some of the surrounding evidentiary facts. Fred Ahlert, an alleged

co-conspirator, testified that on the night of November 26, 1972, he met Smith at the home of Mike Taylor in Washington, Indiana. Smith, Ahlert and Taylor had a discussion, during the course of which Smith stated that he needed six or seven hundred dollars to return to Florida and asked where he could get the money.

Later that evening, the three of them, together with one David McLemore, left in Smith's Chevrolet Nova. Ahlert further testified that while driving past St. Mary's School, Smith asked if there was anything in St. Mary's, and someone in the car stated that it had been broken into earlier. After walking around the school they returned to the car without making any attempt to enter. Ahlert further related that they then drove to a parking lot behind the Gabhart Building on South Street in Washington, after having agreed to break into Mischler's Tavern. Smith asked Ahlert to get out of the car and told the other two to remain. According to Ahlert, Smith then took a crowbar and screwdriver from under the front seat and they went through some alleys to the back door of Mischler's Tavern. Ahlert then stated that while he held the screwdriver, Smith attempted to pry the door open with the bar. Ahlert then gave Smith the screwdriver and they tried to open the door with both tools but were only able to move it approximately one-half inch.

Ahlert then saw a lady looking at them through a window near the top of a nearby building. After Ahlert informed Smith, they left through an alley to South Street and stopped at the screen door of a nearby pool parlor. After opening the screen door, they saw car lights on Main Street. As they were leaving they looked back and saw that it was a Washington city police car. They continued on to the point where Smith's car was parked behind Gabhart's, but neither entered the car. Smith yelled "Run", and fled. Ahlert ran to a nearby cab station where he hid for 15 or 20 minutes. Later, Ahlert saw Kenny Butler and procured a ride. They met Smith with John Butler and all proceeded to the Taylor home.

Ahlert further testified that Smith asked them to return to Gabhart's and get his car. Ahlert agreed but desired to wait awhile. It was later decided that Smith would go with Kenny Butler and Ahlert would go with John Butler. Ahlert and John Butler arrived first, and as Butler raised the hood of the Nova to get the keys, two Washington city policemen, officers Palmer and Perkins, arrived and took Ahlert into custody. Ahlert testified that he later returned to Mischler's with officer Perkins and showed him where they attempted to break in. There was other testimony by the officers to the effect that they had earlier approached Smith's car but could not gain any information from Taylor and McLemore. They found Ahlert's billfold in the back seat. Ahlert identified the screwdriver and crowbar and told of Smith's participation in the attempted break in.

Smith testified that he had been separated from his wife and had been living at Mike Taylor's house in Washington. He had gone to Florida November 17, 1972, and had returned two days before the night in question. He admitted talking with Ahlert and others at Taylor's house, but said the only ones who wanted to raise money were Ahlert and one Roger Clark. He admitted that he, Ahlert, Taylor and McLemore later left in Smith's Nova and drove to St. Mary's School and that no one tried to break in. Smith said they then went to get some beer and parked at Gabhart's where Smith told McLemore and Taylor to stay in the car as they were under 21. He stated that he and Ahlert got out of the car and after walking around in nearby streets and alleys, they saw the police car. Ahlert starting walking fast and then ran, saying the police were after him for bad checks. Smith followed and finally got a ride back to Taylor's house. He denied he attempted to break in the tavern or the pool room.

Smith said he remained in town for about a week before leaving for Denver where he stayed four days. He then went to Florida again, returned about December 16, and was arrested at West Baden two days later.

On the night of the attempted burglary, the police had impounded Smith's Nova. When arrested at West Baden, he had the car with him. He testified that after being refused the return of his car, he went to the place where it was impounded and took it after working hours. He admitted driving his car to both Denver and Florida. On cross-examination, over objection of his counsel, Smith stated that he had taken a young lady with him to Florida, that he only had about $100, and that they had slept in the car together.

## ISSUE 1.

Appellant contends that the trial court erred by improperly allowing admissions of Smith's co-conspirator in evidence, the statements having been made while the co-conspirator (Ahlert) was in custody of the police after the termination of the alleged conspiracy.

During direct examination of officer Perkins he was asked if Ahlert made any admissions after being taken into custody. Defense counsel then objected on the grounds that it called for a conversation outside the presence of the defendant. Although the objection was overruled, the Prosecuting Attorney abandoned that line of questioning and pursued other matters.

Later, however, the inquiry concerning Ahlert's admissions was resumed and the following appears in the record:

"Q. What did Fred Ahlert say about these pry marks? OBJECTION: . . . Attorney for Defendant: Show my objection, Your Honor, for the record.

A. Fred Ahlert then told me that this is where he and Jimmy Dickens—or he and Jimmy Smith—was trying to pry the back door open to Mischler's Tavern.

Q. Did he say who did what?

A. Yes, he did.

Q. What did he say?

A. He just told me that he had handed or had held the screw driver while Jimmy Dickens was trying to pry

open the door with a crowbar, and the crowbar wouldn't work so he had handed Jimmy Dickens the screw driver and he tried to use a screw driver and the crowbar to pry open the back door."

Appellant argues that statements made during and in the furtherance of a conspiracy are admissible against any of the conspirators and that this principle is well rooted in Indiana law as an exception to the hearsay rule. We agree. However, appellant argues that Perkins' testimony concerned statements made by Ahlert while in custody after the conspiracy had long since terminated and that the statements were therefore inadmissible. Again, we agree. In *Patton, Nickelson* v. *State* (1961), 241 Ind. 645, 175 N.E.2d 11, our Supreme Court held:

"It is further well established that only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objects may be shown against the asserted coconspirators who did not make the declarations or do the acts in question. 5 I.L.E., Conspiracy, § 15, pp. 251, 252, *supra*. In this connection it has been held that a confession or admission of the existence of a conspiracy by one coconspirator after he has been apprehended or arrested is not in furtherance of the conspiracy so as to be admissible against his fellow conspirators. *Fiswick* v. *United States* (1946), 329 U.S. 211, 217, 67 S. Ct. 224, 227, 91 L.Ed. 196, 200; See: *Baker* v. *State* (1910), 174 Ind. 708, 713, 93 N.E. 14, 17; *Walls* v. *The State* (1890), 125 Ind. 400, 402, 25 N.E. 457."

The State contends that while the admission of this testimony was improper, it was harmless, citing *Boles* v. *State* (1973), 259 Ind. 661, 291 N.E.2d 357. However, we have examined this case and find that it is not dispositive of this issue. *Boles* is but one of a line of cases standing for the proposition that improperly admitted evidence is harmless in those situations where the same uncontradicted evidence has previously been admitted. In the case at bar, Smith denied the truth of Ahlert's testimony on this point. *See, Arnold* v.

*State* (1973), 157 Ind. App. 359, 300 N.E.2d 135; *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307.

However, appellant failed to properly preserve this alleged error for our consideration. It is well established that to preserve error for review, specific grounds must be stated at the time an objection is made. *Gaynor* v. *State* (1966), 247 Ind. 470, 217 N.E.2d 156; *Greenwalt* v. *State* (1965), 246 Ind. 608, 209 N.E.2d 254; *Patton* v. *State* (1960), 240 Ind. 364, 165 N.E.2d 377.

Also, we can only pass on those objections which were ruled upon by the court. *Greenwalt* v. *State, supra; Patton* v. *State, supra.*

In the case at bar, defense counsel stated no grounds for his objection. Neither did the trial court make any ruling thereon. Moreover, there was no motion to strike testimony, nor was there any request for admonishment. Neither did defense counsel request the court for a ruling nor make any continuing objection for the record. We note that counsel representing Smith in this appeal did not represent him at trial.

Having failed to preserve this issue for our consideration, appellant's argument must fail.

## ISSUE 2.

On cross-examination, officer Perkins was asked by defense counsel:

"Q. You stated that you found some pry marks on the back door of the tavern. Really that wasn't very much of a door to begin with, was it? Wasn't it pretty well beat up from previous break-ins?

A. You can always tell when there is a fresh pry mark."

No objection was made to the above testimony. On redirect examination Perkins was asked to describe the pry marks as to age. The defense objected ". . . on the grounds it calls

for a conclusion of the witness, plus the fact that he has already testified on this point." The objection was overruled and Perkins proceeded to describe the pry marks as "fresh".

Appellant cites *Cockrum* v. *State* (1968), 250 Ind. 366, 234 N.E.2d 479; *Wimsatt* v. *State* (1957), 236 Ind. 286, 139 N.E.2d 903; *Randolph* v. *State* (1954), 234 Ind. 57, 122 N.E.2d 860 for the proposition that a non-expert witness must describe the facts before he gives an opinion to the jury. None of the above cases is dispositive of the question before us.

In the case at bar it would seem that in using the word "fresh" officer Perkins was merely using a descriptive adjective.

No reversible error is demonstrated under this issue.

## ISSUE 3.

Finally, Smith complains that the trial court erroneously admitted, over his objection, certain irrelevant and immaterial matters during Smith's cross-examination. The first instance occurred when the prosecutor, after questioning Smith about his trip to Florida and the amount of money he had, asked him:

"Q. And you drove down there and what did you do? Sleep in the car or get a place to stay?
A. Slept in the car.
Q. You and Susan?
A. Yeah."

Defense counsel then objected that the questions were not relevant to the issues. However, there was no objection to the question before it was answered, nor was there any motion to strike the testimony or admonish the jury to disregard it.

Smith also was examined without objection concerning his efforts to regain possession of his car after it had been im-

pounded by the police. After testifying that he had retrieved the car, he was asked "What time of night was it that you got this car?" He answered "I don't know." It was at this point that defense counsel objected to the line of questioning for the first time, stating no reason for his objection. After the court overruled the objection the prosecuting attorney abandoned that particular line of questioning. Again the error, if any, was not preserved by timely and proper objection. We reiterate that an objection specifying no grounds therefor presents no question for review on appeal. *Greenwalt* v. *State, supra; Patton* v. *State, supra.*

Smith's trip to Florida and references to his automobile were first raised by defense counsel on direct examination. Since the purported reason for the alleged conspiracy was to obtain money for Smith to travel to Florida, the cross-examination concerning the financing of the trip and the retrieval of his car from impoundment, were not completely unrelated to the case.

A long line of cases hold that the length and breadth of cross-examination rests within the discretion of the trial judge. Typical of these cases is *Payne* v. *State* (1970), 254 Ind. 100, 257 N.E.2d 818 where it was said:

"The well established rule is that the extent and scope of cross examination are within the sound discretion of the trial court and there can be a reversal only for an abuse of such discretion. *Polson* v. *State* (1965), 246 Ind. 674, 207 N.E.2d 638; *Farley* v. *State* (1962), 243 Ind. 445, 185 N.E.2d 414; *Rariden* v. *State* (1961), 242 Ind. 689, 177 N.E.2d 736; *Henry* v. *State* (1925), 196 Ind. 14, 146 N.E. 822.

We conclude that the trial judge did not abuse his discretion in admitting this evidence.

Finding no reversible error in the proceedings, judgment of the trial court is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 307 N.E.2d 875.