Schilling v. The State.

No. 14,142.

SCHILLING v. THE STATE.

INTOXICATING LIQUOR.—*License.*—*Sale from Wagon in Public Highway.*—An indictment charging the defendant with the offence of selling intoxicating liquors without a license, to be drank in and about his house, as such offence is defined in section 5320, R. S. 1881, is not supported by proof that the sale was made from an open wagon standing upon a public highway, in a county different from that in which the defendant lived and did business.

SAME.—*"House" Defined.*—*A Wagon not a House.*—An open wagon is in no sense a house, within the meaning of the statute, as a house must be some sort of a building or enclosed structure.

SAME.—*Construction of Statute.*—When the Legislature uses specific terms as to place, the courts must enforce the statute according to its terms, and can not, by judicial construction, supply legislative omissions.

From the Montgomery Circuit Court.

*J. F. McHugh*, for appellant.

*L. T. Michener*, Attorney General, and *A. B. Anderson*, Prosecuting Attorney, for the State.

ZOLLARS, J.—Appellant was convicted upon a charge of having unlawfully sold intoxicating liquors without a license, to be drank in and about his house, where the same were sold. The prosecution is based upon section 5320, R. S. 1881, which provides that "Any person, not being licensed according to the provisions of this act, who shall sell or barter, directly or indirectly, any spirituous, vinous, or malt liquors in a less quantity than a quart at a time, or who shall sell or barter any spirituous, vinous, or malt liquors to be drank, or suffered to be drank in his house, out-house, yard, garden, or the appurtenances thereto belonging, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined," etc.

That section very clearly, as has been ruled by this court, creates two offences. The first consists in selling less than a

quart at a time without a license. The second consists in selling any quantity, without a license, to be drank in the seller's house, out-house, yard, garden or the appurtenances thereto belonging. The indictment was intended as a charge of this last offence, and upon that appellant was convicted.

In construing the above section, this court, in the case of *Burke* v. *State*, 52 Ind. 522, said : " In an indictment for selling in a less quantity than a quart at a time, without a license, there should be no reference, either in the body of the indictment or in the negative averments, to the place where the liquor was sold or where it was drank.   Under the second clause of section 12, *supra* (section 5320, R. S. 1881, *supra*), the place where the liquor was sold to be drank, or was suffered to be drank, becomes important.   There are five places specified : 1. His house.   2. His out-house.   3. His yard.   4. His garden.   5. The appurtenances thereto belonging.   If the liquor is sold to be drank, or is suffered to be drank, in his house, the indictment should so aver, and so with each of the other places named," etc.   To the same effect see *State* v. *Corll*, 73 Ind. 535 ; *Schlicht* v. *State*, 56 Ind. 173.

In the case last above cited, in speaking of the above section of the statute, it was said : " It will be observed, however, that, in the first of these two offences, it was the sale, without license, of a quantity less than a quart, which constitutes the offence, without any reference to the place where it may be drank, while, as to the second of said two offences, the quantity sold, whether a gill or a barrel, is wholly immaterial, but the offence lies chiefly in the place where it is drank, or suffered to be drank."   See, also, *Plunkett* v. *State*, 69 Ind. 68 ; *Burke* v. *State*, 52 Ind. 461.

These rulings, that in the second offence created by the above section of the statute the place where the liquor sold is to be drank, or is suffered to be drank, is an essential element of the crime, are in harmony with well settled principles and the rulings of the courts upon similar statutes.

In the first place, statutes which deprive men of property

or liberty, and bring them into disgrace, while given a reasonable construction so as to arrive at and carry out the intent of the law-makers, are yet construed strictly. If, upon such construction, there is doubt as to the meaning of a statute, the doubt will prevail in favor of the accused. Bishop Stat. Crimes, sections 119, 194, 218, 230, 232; *Kent* v. *State*, 8 Blackf. 163; *Steel* v. *State*, 26 Ind. 82; *United States* v. *Wigglesworth*, 2 Story, 369.

" It being forbidden to set up a faro-table ' in any dwelling-house, out-house, or place occupied by any tavern-keeper, retailer of wine, spirituous liquors, beer or cider,' one in a locality not in terms mentioned—as, for instance, in a house used solely for this purpose—was held not to be prohibited." Bishop Stat. Crimes, section 221, citing *Baker* v. *State*, 2 Harris & J. 5.

A statute of North Carolina made it unlawful for any one to construct, erect, keep up or use any *public* gaming table or place where games of chance should be played, etc. It was held in the case of *State* v. *Langford*, 3 Ired. (N. C.), 354, that an indictment charging the defendant with having played a game of chance was bad because it did not charge him with doing the act at a public gaming place. See, also, *State* v. *Ferguson*, 33 N. H. 424.

By a statute of 1847 (Acts 1847, p. 58) it was made illegal for any one to erect and maintain, etc.; any booth, tent, wagon, huckster-shop, or other place, for the sale of intoxicating liquors, etc., and to sell such liquors at such places, etc., within two miles of any collection of any portion of any citizens of the State for the purpose of public worship. It was held by this court that an indictment for selling liquor in violation of that statute, which made a general charge of selling liquor within two miles of such meeting, and did not charge that it was sold at such booth, tent, wagon, huckster-shop, etc., was insufficient.

That ruling was made in the case of *Bouser* v. *State*, Smith (Ind.) 408, a case which is not reported in the regular set

of Reports, but is found in a volume of decisions reported by Hon. THOMAS L. SMITH, one of the judges of this court at the time the decision was made.

We still have a statute which makes it unlawful to sell or give away intoxicating liquors, or to erect and maintain, etc., booths, wagons, etc., for the sale of such liquors within one mile from the place where people are gathered for public worship, or where an agricultural fair or exhibition is being held. Section 2100, R. S. 1881. That section, although upon the same subject, is different in terms from the former statute.

It may be violated by the giving away or sale of liquor, although the gift or sale may not be at such booth, wagon, etc.

If section 5320, involved here, were in such general terms as that section, this case would be relieved of all difficulty. It would then be immaterial whether appellant sold intoxicating liquor at his house or from a wagon in the country, and upon a public highway, or whether the liquor was sold " to be drank, or suffered to be drank," in his house or upon a public highway.

These references to the act of 1847, and the ruling upon it, and to the act of 1881, *supra*, upon the same subject, are intended to serve no purpose here except to show that when the Legislature uses specific terms as to place, the courts must enforce the statute according to its terms, and can not, by judicial construction, supply legislative omissions; and to show, to some extent, at least, that when the Legislature does not intend to connect any particular place with the offence created, so as to make it an essential element of such offence, general terms are used.

The arguments of counsel for the State are not necessarily antagonistic to anything we have stated thus far. Their position is, that the evidence shows that without a license appellant sold intoxicating liquors " to be drank, and suffered to be drank, in and about his house," as charged in the indictment.

The facts as shown by the evidence are, in brief, these: On the 25th day of August, 1887, there was an old settlers' meeting at Mchary's Grove, in Montgomery county. Prior to, and at that time, appellant lived in Lafayette, in Tippecanoe county, and was engaged in the grocery and beer business. On that day, having put upon his open delivery wagon several kegs of beer, he drove into Montgomery county, and to a point upon a public highway near where the old settlers were meeting. He stopped the wagon upon the highway, but aside from the beaten road, and near the fence. Having unhitched his horses, he placed a keg of beer upon the rear end of the wagon in such position that, standing upon the ground, he could draw beer from it by means of a faucet. In close proximity to the rear end of the wagon he placed a board in such a position as to serve as a sort of shelf upon which to place boxes of cigars. Some of the witnesses state that he also used it as a shelf or sort of temporary counter upon which to place tin quart measures used by him in the sale of the beer. He drew from the keg a quart of beer at a time, and sold it to those who wished to purchase. The beer thus purchased was drank from the quart measures. Some of the witnesses testified that it was drank near the wagon, and others that it was drank from ten to fifteen feet from the wagon. That, however, does not seem to us to be material.

The question for decision is, was the beer sold to be drank, or suffered to be drank, in or about appellant's house, as charged in the indictment, or within the terms of the statute? Was the wagon appellant's house, within the terms of the statute? If it was, appellant was guilty. If it was not, he was not guilty and the judgment must be reversed. In the ordinary and most common use of the word, house means an ordinary building for the use of a family—a dwelling-house—but that is not the only definition of the word, either in common parlance, or in the law. Both recognize such houses as packing-houses, smoke-houses, ice-houses, banking-houses,

mill-houses, etc., and, in general, business-houses. In such cases, the word house is the equivalent of building. *Ford v. State*, 112 Ind. 373 (378).

The statute under consideration, while it includes all sorts of houses, doubtless has more direct reference to business-houses. But a house must be some sort of a building or inclosed structure. It has been held that a statute punishing the keeping of houses of ill-fame may be violated by maintaining a flat-boat kept on a river, but it was so held because upon the boat was a cabin—an inclosed structure, furnished and protected from the water, and in which men and women ate, slept and lived. The cabin was a dwelling-house because it was an inclosed structure in which persons lived. *State* v. *Mullen*, 35 Iowa, 199.

It would be difficult to see how an open, uncovered wagon could, by any sort of use, be regarded as a house of ill-fame, or a disorderly house, or how a person having no other habitation or dwelling could be regarded as a householder.

Appellant's wagon, with the beer upon it, might be called his business wagon, and, possibly, for the time being, his business place, but we know of no rule of language or of construction which would sanction a holding that it was, in any sense, his house. He might just as well have placed his keg upon a stump, or upon a rock, and have drawn beer from it to sell to those who wished to purchase. Had he done so, clearly it could not be said that the stump or the rock thereby became his house. And had he left the keg in any way fastened upon the stump, the rock or the wagon, and some one had come in the night, loosened the fastening and taken it away, clearly such an one would not have been guilty of burglary, because neither a stump, a rock, nor an uncovered wagon is a house.

The beer was drank near the wagon, but as the wagon was not a house, it was not, and could not be, sold to be drank or suffered to be drank in or about appellant's house; it was not drank in an out-house, yard or garden. There were none

such there, but a public highway. There were no "appurtenances thereto belonging," because there was no house to which anything could be appurtenant.

The mention of out-houses, garden, yard, and appurtenances in the above section 5320, indicates very clearly that the Legislature had in mind only a building, a house, used either as a dwelling or as a business house, and was not providing against the sale of liquor in quantities of a quart or more, by a footman upon a public highway, or by a person carrying his liquor in an open wagon upon a public highway. It must be remembered that the Legislature, by the section under discussion, was not providing, nor attempting to provide, an absolute prohibition against all sales of liquor without a license, but only against sales in a less quantity than a quart, and against sales of liquor "to be drank, or suffered to be drank," in the house, out-house, yard or garden of the seller, and the appurtenances thereto belonging. To sell liquor by the quart, or larger quantity, without a license, to be drank, or suffered to be drank, at places other than those named, was not made a crime.

Appellant might have sold a quart of intoxicating liquor at his place of business in Lafayette to be drank at the grove in Montgomery county where the old settlers were holding their meeting, without violating any of the provisions of section 5320, *supra.*

It may be that that section ought to be so amended as to cover a case like this. We think it ought to be so amended, and we can think of no reason why section 2100 should not be so amended as to prohibit the sale of intoxicating liquors within one mile of an old settlers' meeting, as it prohibits such sale within one mile of an agricultural fair, and within one mile from the place where any religious society or assemblage of people is collected for religious worship. But, as already stated, it is not the province of the courts to supply omitted legislation by judicial construction. They have no such authority.

In support of their contention that section 5320 should be so construed as to hold that appellant's wagon was his house, counsel for the State cite us to rulings in other States upon various statutes.

A law of Alabama, which prohibited the retailing of spirituous liquors except by licensed persons, permitted merchants and shopkeepers to sell by the quart, if the liquor was not drank in their stores, *or on the premises* where they resided or had their stores.

In the case of *Swan* v. *State*, 11 Ala. 594, it was held that the term " premises," as used in the statute, meant " something over which an individual has control, either by actual possession *or by claiming and exercising* the right to prevent the occupation by others."

In the case of *Downman* v. *State*, 14 Ala. 242, the above ruling was departed from, and it was held that the term " premises " meant " some place over which the shopkeeper has the *legal right* to exercise authority and control." Those cases are in entire harmony with our construction of our statute. There is nothing in the cases of *Easterling* v. *State*, 30 Ala. 46, and *Brown* v. *State*, 31 Ala. 353, in any way in conflict with what we have here decided.

Subsequent to the decision in *Downman* v. *State, supra,* a code was adopted in Alabama, and a section was inserted which made it unlawful for any person, without a license, to sell spirituous liquors in any quantity, " if the same is drank *on* or *about* the premises."

It was held in the cases last above cited, that, looking at the former law, and the decisions under it, and assuming that the framers of the code had knowledge of those decisions, it should be held that the phrase " about the premises," was used to embrace places over which the unlicensed seller of such liquor had no legal right to exercise authority or control, but which were yet so near his premises, and so situated in relation thereto, that to permit the liquor sold by him to be drank at them would produce the very evil in *kind*, though

not in *degree*, which the prohibition against drinking it on his premises was intended to prevent.

In the case of *Pearce* v. *State*, 40 Ala. 720, the above mentioned section in the code seems to have been given a broader application. The facts in that case were that the defendant took intoxicating liquors in a buggy to an administrator's sale. He sold the liquor in quart bottles from the buggy, and the purchasers took it some distance from the buggy and drank it, without knowledge on the part of the seller that they intended to drink it at that place. It was held that the buggy in which the liquor was carried, and from which it was sold, constituted the seller's premises, within the meaning of the code, and that it was drank " about the premises."

On the authority of that case, as stated, and without any reasoning at all, it was held in the case of *Powell* v. *State*, 63 Ala. 177, that the defendant was properly convicted of selling liquor " drank on and about his premises," on proof that the liquor was sold from a jug which he had in a field where he was working with others, more than a mile from his house, and on the plantation of another person, over which he had no control.

The conclusions in these last two cases were certainly reached by the most liberal rules of construction. Especially may that be said of the conclusion in the last case. That decision, clearly, stretched the law to its utmost tension, if it did not amount to judicial legislation. However that may be, the cases are not authority for a holding that, under our statute, an open, uncovered wagon is a house. Indeed, our statute is so different from the Alabama statutes that the cases are not authority upon any point involved in the case before us. They might, with some plausibility, be relied upon as authority if our law were now as it was in 1873. The act of 1873 (Acts 1873, p. 151), provided that it should be unlawful for any person, without a license, to sell, etc., intoxicating liquors to be drank in, upon, or about the

building or *premises* where sold. See *O'Connor* v. *State*, 45 Ind. 347. The same may be said of the case of *Bandalow* v. *People*, 90 Ill. 218.

Without further elaboration, our conclusion is, that the evidence does not show appellant to have been guilty of any crime under section 5320 of our statutes, and that, therefore, the judgment must be reversed.

Judgment reversed.

