BEULAH ROUSE, Respondent, *v.* THE CATSKILL AND NEW YORK STEAMBOAT COMPANY, Appellant.

*Civil damage act — does not cover the case of a bar upon a steamboat.*

The provisions of chapter 646 of the Laws of 1873, the civil damage act, providing that " any person or persons owning or renting, or permitting the occupation of, any building or premises, and having knowledge that intoxicating liquors are to be sold therein, shall be liable " in damages in certain cases, are not applicable to a case in which liquor is sold at a bar in the bar-room of a steamboat in the course of a voyage on a river within the State of New York. ·

APPEAL by the defendant, The Catskill and New York Steamboat Company (Limited), from a judgment of the Supreme Court, entered in the office of the clerk of the county of Columbia on the 10th day of July, 1889; and also from an order denying the defendant's motion for a new trial, which was entered in said clerk's office on the same day, after a trial before the court and a jury at the Columbia County Circuit, at which a verdict was rendered in favor of the plaintiff for $4,000, whereupon the defendant's counsel moved that the verdict be set aside as excessive and for a new trial upon the minutes, which motion was denied.

*Peter Cantine*, for the appellant.

*J. Rider Cady*, for the respondent.

LEARNED, P. J.:

This is an appeal by defendant from a judgment on a verdict and from an order denying a new trial. The action is brought, under the so-called civil damage act, to recover damages sustained by plaintiff in her means of support by the death of her father, Frederick W. Rouse, whose death is alleged to have been caused through his intoxication occasioned by his drinking liquors sold to him by one John Little. It is not alleged or claimed that the defendant sold the liquors. But it is claimed that defendant rented to Little a part of the building in which the liquor was sold and had knowledge that liquors were to be sold therein.

There are several questions of importance in this case. One is whether there was evidence of the intoxication of the deceased on which to go to the jury. Another, and one of very great weight, is whether there

was evidence for the jury that the death of the deceased was caused by intoxication. Still another is whether the verdict was not excessive. But in the view which we take of this case we pass these over without expressing any opinion thereon.

The defendant was the owner of the side-wheel steamboat, called the Walter Brett, running nights on the Hudson river between New Baltimore and New York city, and stopping at intermediate landings. There was in the bow of the steamboat a bar-room, below deck. In the forward end of the bar-room was the bar. The bar was never opened except on the voyages of the steamboat up and down the river and after she got out from the dock into the stream. John Little ran the bar and had the proceeds. He was also steward of the boat; bought the provisions and boarded the crew. He was the steward on the Catskill and the Brett and all the boats the defendant had except one. Although he was thus in the defendant's employment as steward, it is not alleged in the complaint, or proved, that the sales of liquor at the bar were made by defendant. Indeed, it appears that Little was himself the proprietor of the bar; and it is not claimed that the defendant was interested therein.

The claim of the plaintiff is, then, that the defendant is liable because it permitted the occupation of the bar by Little, or rented it to him, having knowledge that intoxicating liquors were to be sold there.

Of course, there is no common-law liability. If liable at all, defendant is liable by force of the statute, chapter 646, Laws of 1873. The material part is: "Any person or persons owning or renting or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, shall be liable," etc. The question is, whether this steamboat was within the words " building or premises."

In examining this question we must notice that the act of Little in selling liquor to the deceased was an unquestionably lawful act, and that the act of the defendant in permitting Little to occupy the bar, with knowledge of his intent; was also unquestionably lawful. A statute, then, which exposes an innocent defendant to possible liability for damages by reason of a lawful act should not be extended beyond its evident meaning.

The word "build" is derived from the word "bold," meaning a dwelling. A building is defined to be "a structure in the nature of a house built where it is to stand." (Murray's Dictionary.) "As commonly understood, a house for residence, business or public use, or for shelter of animals, or storage of goods." (Century Dictionary.) And very generally, though not always, the idea of a habitation for the permanent use of man, or an erection connected with his permanent use, is implied in the word "building." Bouvier defines the word as "an edifice erected by art and fixed upon or on the soil, composed of different pieces of stone, brick, marble, wood or other proper substance, connected together, and designed for permanent use in the position in which it is so fixed." A building is a part of the land. One would not call a tent a building. As said in one case of the word building: "In its broadest sense it can mean only an erection intended for use and occupation as a habitation, or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed." (*Truesdell* v. *Gay*, 79 Mass. [13 Gray], 311.) A vault for the interment of the dead, although above ground, is not a building under the statute against burglary. (*People* v. *Richards*, 108 N. Y., 137.) Whether it would be a building under this statute we need not inquire. But we are confident that it would be a great misuse of language to speak of a steamboat as a building. If one were to say that he saw a building floating down the river with many people in it, he never would be thought to mean a vessel. A vessel is not fixed in the earth, and does not form a part of the land. Even when fastened to the shore it would not pass by a conveyance of the land. And though, in some exceptional cases, buildings may be removed from the land, still the prevailing idea is that of permanence.

The cases cited by plaintiff under the criminal law of England, as to burglary, speak of permanent buildings, not of vessels. So in our own statutes it was deemed necessary to declare that the word "building," as used in the chapter on burglary, includes a railway car, vessel," etc. (Penal Code, § 504.) So, also, in regard to the crime of arson. (§ 493.) From these sections it may be inferred that, without such definition of the word, a vessel would not be included.

We next come to the word "premises." The word, in its legal

use, originally described the first of the eight parts of a deed, viz., all which preceded the *habendum*. The object of this part of the deed was to rightly name the feoffer and feoffee, and to comprehend the certainty of the lands to be conveyed by the feoffment. (Coke Lit., 6a.) It is very easy to see how, from this meaning of the word, it came to designate the lands. A large part of the portion of the deed thus named was taken up with the description of the lands. Hence the word premises, in the latter part of the deed, was used as meaning the lands only, as, for instance, "the above-described premises." In this way the word has come into general use with the meaning, lands; affording an instance, among many others, of the tendency to use a general and indefinite word, rather than one of precise and definite meaning. But the word, however loosely used in this way, always means land and the building thereon. It is not applied to vessels. The plaintiff cites cases from Alabama where parties were convicted of selling liquor to be drunk on the premises, although the land on which it was drunk was not their own. Whether the convictions were correct or not is immaterial on the present point. Premises certainly meant land of some one.

Nor is there anything in the language of the statute in question which should change the views above expressed. It speaks of renting or permitting the occupation of any building or premises. These are words which, in ordinary use, are applied to the renting or permitting the occupation of land. " Rent " is a profit out of lands and tenements. To rent is to grant the right to occupy lands, paying a certain sum therefor. It is true that in a loose way " renting " may be used for " hiring." But certainly it would be extending the meaning of the word in this statute to make it applicable to vessels.

In construing this statute we cannot be much aided by decisions. We must try to ascertain what the words fairly mean. That is one guide to the intention of the legislature. We must take what they said. If they meant more, they should have said so. Whether or not the legislature should forbid the sale of spirituous liquors on vessels and on railroad cars is not for us to say. This statute does not forbid any selling in any place. We have no reason to suppose that the legislature intended to make railroad companies respon-

sible for injury to means of support, occasioned by the sale of such liquors in their cars with their knowledge. And it is well said by the defendant that, if the plaintiff's construction is correct, the owner of a foreign steamer coming to any port in this State would be liable as this defendant has been made liable.

We have no right to extend this statute beyond the plain and distinct meaning of the words, under a wish to prevent some of the evils of drinking spirituous liquors. Though not strictly a penal statute, it imposes a new liability, and that, too, on an innocent party. And it cannot be extended by implication.

We are of opinion that the vessel was not included in the words "building or premises," and that the judgment and order must, for that reason, be reversed. Whether there was sufficient evidence as to the cause of the death of the deceased we do not decide.

The judgment and order must be reversed and a new trial granted, costs to abide the event.

LANDON and MAYHAM, JJ., concurred.