OF

THE STATE OF IOWA,

AT

DES MOINES, MAY TERM, A. D. 1892,

AND IN THE FORTY-SIXTH YEAR OF THE STATE.

---

THE STATE OF IOWA, Appellee, v. THOMAS CARROLL, et al., Appellants.

1. **Witnesses:** IMPEACHMENT: INTEREST. One who, in the capacity of a private detective, has been instrumental in procuring the indictment of one for a felony, and who has testified as a witness for the state to an alleged admission of the accused to the commission of the offense charged, may, for the purposes of impeachment, be questioned upon cross-examination as to the compensation he is to receive for his services in such case, and whether or not it is dependent upon his success in procuring the conviction of the defendant.

2. **Criminal Law:** EVIDENCE: PROOF OF TESTIMONY OF ACCUSED BEFORE GRAND JURY. Statements voluntarily made by one before the grand jury touching an offense for which he is then under arrest, may be put in evidence against him through the testimony of members of the grand jury upon a trial under an indictment subsequently found.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

TUESDAY, MAY 10, 1892.

THE defendants were indicted upon a charge of feloniously, willfully and maliciously burning a barn, the property of one S. C. King. The cause was tried to a jury, and the defendants were found guilty, and there was a judgment that they be imprisoned in the penitentiary for one year. The defendants appeal.— *Reversed.*

*Ed. L. Collin* and *Lynn & Sullivan*, for appellants.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROTHROCK, J.—I. It appears from the evidence in the case that on the night of the third day of November, 1888, the barn of S. C. King was destroyed by fire. The fire was discovered between eleven and twelve o'clock. The flames were all over the barn when it was discovered, and it could not be determined at what part of the building the fire originated or was started. The defendants are two boys, who resided with their parents in the same neighborhood with King. They were at that time aged fifteen and sixteen years, respectively, and are cousins. They are also nephews of S. C. King by marriage. There is nothing in the whole record to show that the defendants had any motive for setting the barn on fire, and, aside from what is claimed to be an admission of the defendant, Thomas Carroll, made to one Sego, there is nothing directly pointing to the defendants as being guilty of burning the barn. This man Sego was a witness on the trial, and he testified that he was employed by King as a detective to bring the guilty parties to justice, and that in pursuance of his employment he went to a lyceum at a schoolhouse in the neighborhood a week after the barn was destroyed, with a supply of whisky, and that he gave the defendant, Thomas Carroll, some of it, which he drank, and, after having taken several drinks, he told him that the defendant (William) said

that he (Thomas) fired the barn, and that Thomas replied that he (William) "was a damn liar; that he done it himself." He then proposed to make an arrangement with one Ordway, by which he (Sego) and the defendant, Thomas, should burn King's house and get fifty dollars for burning it. He also testified that at another time he had a conversation with both of the defendants, in which they proposed, if he skipped the country, they would swear he burned the barn. He testified to other facts in connection with his employment as a detective. On cross-examination he was asked by counsel for the defendants how much salary he was to receive for his services as detective. The state objected to the question as incompetent and immaterial. The objection was sustained, and defendants excepted to the ruling. He was further asked, on cross-examination, if he had stated in a certain conversation with one Pierce that his compensation depended upon whether he succeeded in convicting the defendants. An objection to this question was sustained. He was further asked if he had not stated that he was to receive forty acres of land and four hundred dollars if the defendants were convicted.

In our opinion, the court should have overruled these and like objections to other parts of the cross-examination of the witness, and permitted the defendants to impeach him by showing the motives which actuated him in playing the role of detective. He admitted that the statement he made to the defendant Thomas Carroll that William had said he (Thomas) burned the barn was false, and that it was made to entrap Thomas into a confession. It further appeared in the testimony of the said Sego that he did afterwards twice "skip the country," as he termed it. He stated that he went away once upon payment of one hundred dollars, and at another time he went away upon payment of one

**1. WITNESSES:** impeachment: interest.

hundred and fifty dollars, and the last time he remained until he was brought back, and, as we understand it, he was finally detained and held in jail as a witness. The system of detection, by means of false pretenses, lying, and deceit on the part of the detective, can only be justified, if justified at all, by the fullest and most searching examination of the motives and inducements under which he acts. No party acting in that capacity should be allowed to keep back or conceal any fact which bears upon the motives by which he is controlled in the pursuit of his employment. It is always competent to show the interest of a witness, and the rule applies with peculiar force in a case where facts are claimed to have been ascertained by falsehood, and in the line of employment as a detective, and with the aid of the appliances used in this case. And it was very important that the defendants should have the full liberty of cross-examination and impeachment in this case, for we are free to say that, if the jury had found that this witness was unworthy of belief, there was no other evidence upon which either of the defendants ought to have been found guilty.

II. The defendants voluntarily appeared before the grand jury which returned the indictment, and testified

**1. CRIMINAL LAW: evidence: proof of testimony of accused before grand jury.** as witnesses. Two of the grand jurors were called as witnesses by the state on the trial of the indictment, and testified to certain statements made by the defendants when they were before the grand jury. Counsel for the defendants objected to the testimony of the grand jurors on the ground that they should not be permitted to testify, because the defendants were at the time they gave their testimony under arrest for the crime, and that their statements were not therefore voluntary. The record shows that the defendants were not compelled to testify. On the contrary, it appears that the defendants were advised by the foreman of the

grand jury that they were not required to testify, and
that after said advice they voluntarily made the state-
ments now under consideration. These statements
were not in the nature of confessions. They were to
the effect that the defendants first heard of the fire
from a certain person, and this appears to have been a
mistake, whether made intentionally or by design does
not appear. It was a circumstance which the state had
the right to present to the jury for such consideration
as it was entitled to. Having been voluntarily made,
the evidence was admissible. Wharton's Criminal
Evidence, sec. 631.

III. It is claimed with great confidence that the
verdict was without sufficient support in the evidence.
As the judgment must be reversed for the refusal to
permit the defendants to show, by cross-examination
and impeachment, the whole connection of the detective
Sego with the case, including his interest and his
motives, and as the evidence may not be the same on
another trial, it would be improper to determine the
sufficiency of the evidence at this time. But we think
that, in view of a new trial, it is proper to say that the
evidence of what is called the *corpus delicti*, or body of
the offense, is, to say the least, exceedingly doubtful.
Under section 4427 of the Code, no conviction can be
had unless there is proof, other than the confession of
the defendant, that a crime was actually committed.
It is always necessary, in every case, to prove that a
crime has been committed. In the prosecution of a
homicide, the accused cannot be convicted, unless the
death be first distinctly proved; and, in a case of arson,
there can be no conviction without satisfactory proof
that the building was feloniously, willfully, and
maliciously burned by some one, and was not an acci-
dental burning.

For the errors above pointed out the judgment of
the district court is REVERSED.