33702. KIMSEY *v.* CITY OF ROME *et al.*

DECIDED OCTOBER 4, 1951.

*Hicks & Culbert,* for plaintiff.
*Parker, Clary & Kent,* for defendants.

SUTTON, C. J. This case arose out of an alleged violation of a zoning ordinance of the City of Rome. Mrs. R. L. Kimsey was the owner of a vacant lot located at the corner of Sherwood Road

and Shorter Avenue in the City of Rome, the lot being within the area covered by the zoning ordinances claimed to have been violated. She permitted her son-in-law and daughter to place an automobile trailer on said lot, the same to be used by them as a place in which to live. The trailer was blocked up and was stationary. It had electricity, water, and sewerage, the same being connected with the electric lines, water mains, and sewers of the City of Rome. The daughter and son-in-law of Mrs. Kimsey slept in the trailer and did their cooking in it and used it as their home or dwelling place. Mrs. Kimsey was officially notified to remove the trailer from the vacant lot on the ground that it was in violation of section 5, R. 1A, paragraph D, of the zoning ordinance of the City of Rome, which is as follows: "The minimum ground floor area of a dwelling, exclusive of porte-cocheres, attached garages and porches, shall be seven hundred (700) square feet in this district." The trailer had 300 square feet of floor space.

Mrs. Kimsey appealed to the Board of Adjustment of the City of Rome, and this board ruled adversely to her contentions, and she then appealed to the Superior Court of Floyd County. Her appeal there was dismissed, and she excepted and brought the case to this court.

The question for determination is whether the trailer here involved is a dwelling within the purview of the zoning ordinance above quoted, which restricts the area to dwellings with a minimum floor space of 700 square feet. The trailer was equipped as a dwelling and was connected with the electric lines, the water mains and sewers of the city, and it was blocked up and had come to rest on the lot in question. Mr. and Mrs. R. L. Burch, the son-in-law and daughter of Mrs. Kimsey, were living in and using the trailer as their dwelling place. In fact, the record shows that they purchased the trailer at a cost of. $4000 and placed it on the lot and equipped it as a place in which to live. It appears that they were unable to obtain the necessary materials to build a dwelling house, and that they purchased the trailer instead and placed it on the lot as their dwelling.

The section or area where this lot was located was a good residential section and had been zoned for dwellings with a minimum ground floor space of 700 square feet. Had the parties

constructed a house on this lot the size of the trailer, or had they purchased a house that size and had it moved and placed on the lot, this would not have been permissible under the zoning ordinance. We think that the trailer here described comes within the purview of said zoning ordinance, and was in violation thereof in the same manner as the houses just referred to would have been. Counsel do not cite any Georgia case on this question, and so far as we are informed there is none. But Aetna Life Ins. Co. *v.* Aird, 108 Fed. 2d, 136 (125 A.L.R. 1436) is a trailer case and is quite in point with the present one. It was there said: "Streamlined, mounted on two wheels, and capable when connected with beast or vehicle having motive and tractor power, of swift and easy motion, though it was, it was not automotive, and it was not bought to be, nor was it, used, except incidentally, for locomotion. The only use made of its movability was to get it to the place where it was to be used, just as ready cut houses, if small enough, may be and sometimes are moved, and set up complete. Well, indeed completely, equipped as a place in which to live, with beds, bath, toilet, cooking facilities, side walls, a roof and floors, and with cross walls subdividing it into parts, it was bought and equipped to be, and at the time of the fire, was being and had for a week been, used, as deceased's residence and office combined. In effect, a modern efficiency apartment, it had been transported to the oil field where the deceased was drilling a well, and there, disconnected from the automobile, it had been raised up, its four corners supported by four heavy special jacks placed directly underneath its substantial steel braced beamed floor, and its outside walls. Thus, what had been built for a dwelling or place to live, movable from place to place, was at rest, and was being occupied as a dwelling, as completely as if, instead of a trailer, it were a ready cut or knocked-down house, transported to the field, either set up, or in units for setting up.

"As such, it was certainly a building, in the sense of a dwelling, 12 C.J.S. Building, p. 378, Rouse *v.* Catskill & N. Y. Steamboat Co., 59 Hun. 80, 13 N.Y.S. 126; Neekamp *v.* Huntington Chamber of Commerce, 99 W. Va. 388, 129 S. E. 314. It was too, a building, in the generic sense of something built or constructed for use as a shelter or habitation for man or beast.

If, instead of a completed trailer, the material which made it up had been assembled on the lease, and there built into a dwelling or habitation for deceased's use, no one could, we think, contend that the resulting structure was not a building. The fact that it was not completed before transportation and equipped with wheels to roll it, does not, we think, at all change the undisputed fact that in every essential respect, it was built for and was being used by deceased, as a shelter and habitation, in short, a dwelling."

*The judgment of the trial court is affirmed. Felton and Worrill, JJ., concur.*