## SIMMONS *v.* STATE OF INDIANA.

[No. 29,220.   Filed October 5, 1955.]

*Carrol F. Dillon* and *Robert J. Hayes,* both of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Richard M. Givan,* Deputy Attorneys General, for appellee.

EMMERT, C. J.—This is an appeal from a judgment entered on a finding made by the court that the appellant was guilty of arson in the first degree as charged in an affidavit, upon which he was sentenced to the Indiana State Prison for a period not less than two nor more than fourteen years. The error assigned is the overruling of appellant's motion for a new trial.

The essential part of the affidavit charging the crime is as follows:

> "RUSSELL SHELTON being duly sworn upon his oath says that HARVEY SIMMONS on or about the *4th* day of *June* A.D. *1954*, at said County and State as affiant verily believes did then and there unlawfully, feloniously, wilfully and maliciously set fire to and burn a certain dwelling house then and there situate, of the value of Fifty Dollars ($50.00) which was then and there the property of another, to-wit: Alex Scott, then and there being contrary to the form of the Statute, in such cases made and provided, . . ."

The evidence, when viewed most favorably to the state, discloses that Elwood Scott owned a house trailer

which was on wheels. In April or May of 1954, one Eddie Stuckey, who was a tenant of a Mrs. Ross, told Scott, the owner of the trailer, that he could move it on the land leased by him across from the Water Works Road in Vanderburgh County. No rent was promised or paid, Stuckey saying that "it was all right to be down there, people were stealing his corn." It was pulled there by an automobile, after which the owner took out the wheels and placed cement blocks under the chassis. The owner was living and sleeping in it at the time it burned, although he was not present when the fire occurred at about 1:00 A.M. the 4th day of June, 1954. The owner had constructed the trailer himself on an automobile chassis. He stated it was too heavy, so he set it on concrete blocks. It had a hitch to attach to an automobile and was 8 by 15 feet in dimensions.

The owner was no more than a tenant at sufferance. *Carger* v. *Fee* (1894), 140 Ind. 572, 580, 39 N. E. 93; *Soroka* v. *Knott* (1929), 90 Ind. App. 649, 653, 168 N. E. 703.[1]

Appellant insists that there was no evidence tending to prove the *corpus delicti* independent of the confession of appellant. With this we agree. Exclusive of the confession, there was no evidence as to what caused the fire. "Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone. *Parker* v. *State* (1950), 228 Ind. 1, 6, 88 N. E. 2d 556, 89 N. E. 2d 442, *supra.*" *Dennis* v. *State* (1952), 230 Ind. 210, 216, 102 N. E. 2d 650.

---

1. "The mere permission to use land without any provision for rent could, at most, amount to a tenancy by sufferance, if, indeed, it would amount to that, and where one in possession repudiates the relation of tenant to his landlord, no notice to quit is necessary. *Cargar* v. *Fee* (1894), 140 Ind. 572, 580, 39 N. E. 93." *Soroka* v. *Knott* (1929), 90 Ind. App. 649, 653, 168 N. E. 703.

"The rule seems to be well established generally that an extra-judicial confession will not be admitted in evidence and a conviction will not be upheld until and unless the *corpus delicti* has been established by clear proof independent of the confession. *Gaines* v. *State* (1921), 191 Ind. 262, 268, 269, 132 N. E. 580; *Hunt* v. *State, supra; Messel* v. *State* (1911), 176 Ind. 214, 219, 95 N. E. 565; *Griffiths* v. *State* (1904), 163 Ind. 555, 558, 559, 72 N. E. 563; 1 *Wharton's Criminal Law* (12th Ed.), §§359, 360; 20 Am. Jur., Evidence, §484, 22 C. J. S., Criminal Law, §839, pp. 1471-2; 23 C. J. S. Criminal Law, §916b, p. 183; *Underhill's Criminal Evidence* (4th Ed.), §36; Anno., 127 A. L. R. 1130, 1134." *Parker* v. *State* (1949), 228 Ind. 1, 6, 88 N. E. 2d 556, 89 N. E. 2d 442.

"A naked confession is one which is not corroborated by independent proof of the *corpus delicti*. Upon such a confession made in open court, as, for example, by a plea of guilty, a conviction of any crime, and sentence may be had. But in the case of all extra-judicial confessions it is the rule that the *corpus delicti* must be proved by additional evidence before a conviction upon the naked confession alone will be upheld. Underhill, Criminal Evidence (2d ed.), §147." *Gaines* v. *State* (1921), 191 Ind. 262, 268, 132 N. E. 580.[2] In arson, the *corpus delicti* is not proved by mere proof that property burned. "The law implies that the fire was the result of accident or some providential cause, rather than a criminal design, unless the evidence proves otherwise. *Phillips* v. *State* (1859), 29 Ga. 105; *Stallings* v. *State* (1872), 47 Ga. 572; *State* v. *Carrol*

---

2. "In Indiana the independent evidence alone need not be sufficient to establish the *corpus delicti* beyond a reasonable doubt, but there must be some evidence of probative value aside from the confession to prove that the crime charged was committed." *Parker* v. *State* (1949), 228 Ind. 1, 7, 88 N. E. 2d 556, 89 N. E. 2d 442.

(1892), 85 Iowa 1, 51 N. W. 1159." *Williams* v. *State* (1930), 90 Ind. App. 667, 677, 169 N. E. 698.[3]

Appellant's motion for a new trial contends that there was a fatal variance between the affidavit and the evidence, inasmuch as the affidavit charged appellant feloniously "burned a certain dwelling house," when the uncontradicted proof showed that it was a house-trailer that burned. The other members of the court are of the opinion that the house-trailer was a "dwelling-house" as the term is used in §10-301, Burns' 1942 Replacement (Acts 1927, ch. 44, §1, p. 122), but I am of the opinion that the house-trailer was not a "dwelling-house" within the meaning of this section of the statute for the following reasons:

The 75th Regular Session of the General Assembly in 1927 passed a comprehensive act on arson, the first four sections making it a felony to burn various kinds of property of another, and the last clause of each section prohibiting the burning of insured property with intent to defraud the insurer. Chapter 44, Acts 1927.

Since there are no common-law crimes in this jurisdiction, *McDaniels* v. *State* (1916), 185 Ind. 245, 113 N. E. 1004; *Vinnedge* v. *State* (1906), 167 Ind. 415, 79 N. E. 353; *Kleihege* v. *State* (1934), 206 Ind. 206, 188 N. E. 786, we are concerned with

---

3. "Inasmuch as the *corpus delicti* consists of two elements: (1) That a certain result occurred, in this case the burning of a building; and (2) that some person is criminally responsible for the act, *Carlton* v. *People*, 150 Ill. 181, 37 N. E. 244; 14 Am. Jur., Criminal Law, sec. 6, it may be seen that the independent evidence tends to establish only that a building burned. There is nothing, save the confession alone, which suggests or tends to corroborate the element that some person wilfully fired the building. Therefore, in the absence of any evidence independent of the confession clearly showing a crime to have been committed by some person and in the further absence of evidence of other facts or circumstances so fully corroborating the confession as to show the commission of the offense beyond a reasonable doubt, the rule that the *corpus delicti* cannot be proved by the confession of a defendant alone must be applied." *People* v. *Lueder* (1954), 3 Ill. 2d 487, 121 N. E. 2d 743, 744.

what the various sections prohibited, and the material parts thereof are set forth in the note.[4]

4. "Any person who wilfully and maliciously sets fire to or burns, or causes the setting of fire to or the burning, or who aids, counsels or procures the setting of fire to or the burning of any dwelling-house, rooming-house, apartment-house or hotel, finished or unfinished, occupied or unoccupied, or any kitchen, shop, barn, stable, garage or other outhouse, or other building that is part or parcel of any dwelling-house, rooming-house, apartment-house or hotel, or belonging to or adjoining thereto, finished or unfinished, occupied or unoccupied, such being the property of another; . . . shall be guilty of arson in the first degree and, upon conviction thereof, shall be imprisoned in the state prison not less than two [2] nor more than fourteen [14] years." Section 10-301, Burns' 1942 Replacement.

"Any person who wilfully and maliciously sets fire to or burns, or causes the setting of fire to or burning, or who aids, counsels or procures the setting of fire to or the burning of any barn, garage, stable or other building, finished or unfinished, occupied or unoccupied, not a part or parcel of any dwelling-house, rooming-house, apartment-house or hotel, or any shop, storehouse, warehouse, factory, mill or other building, or any church, meeting-house, court-house, workhouse, school, jail or other public building or any bridge, finished or unfinished, occupied or unoccupied; such being the property of another . . . shall be guilty of arson in the second degree and shall, upon conviction thereof, be imprisoned in the state prison not less than one [1] nor more than ten [10] years." Section 10-302, Burns' 1942 Replacement.

"Any person who wilfully and maliciously sets fire to or burns, or causes the setting of fire to or the burning, or who aids, counsels or procures the setting of fire to or the burning of any barrack, cock, crib, rick or stack of hay, corn, wheat, oats, barley or other grain or vegetable product of any kind; or any field of hay, straw, grass or grain of any kind, cut or uncut; or any pile of coal, wood or other fuel; or any pile of planks, boards, posts, rails or other lumber; or any street-car, interurban car, railway car, boat, wharfboat, water-craft or vessel, dirigible balloon, airplane of any kind or character, *automobile or other motor vehicle*, finished or unfinished; or any reaping machine, mowing machine, threshing machine, separator, clover huller, plow, cultivator, or any other agricultural or farming implement, vehicle, or machinery, finished or unfinished; *or any other personal property of any kind or character whatsoever not herein specifically named*, such property being the property of another; . . . shall be guilty of a felony and shall, upon conviction thereof, be imprisoned in the state prison not less than one [1] nor more than three [3] years." Section 10-303, Burns' 1942 Replacement. (Italics added.)

"Any person who wilfully and maliciously sets fire to or burns, or causes the setting of fire to or the burning, or who aids, counsels or procures the setting of fire to or the burning of any goods, wares, merchandise or any other chattels or personal property of any kind or character whatsoever; such being the property of another, . . . shall be guilty of a felony and shall, upon

"In construing criminal statutes, we are not concerned with what the Legislature might have done. We are concerned only with determining the legislative intent as expressed in the statute. ' "It is fundamental that penal statutes are to be strictly construed; that a statute in derogation of a common right and highly penal in character is only to be applied to cases clearly within its provisions; that penalties may not be created by construction, but must be avoided by construction unless they are brought within the letter and the necessary meaning of the act creating the penalty. This requires that where there is ambiguity it must be resolved against the penalty, and only those cases brought within the statute that are clearly within its meaning and intention." *Manners* v. *State* (1936), 210 Ind. 648, 654, 5 N. E. 2d 300, 303.' *Dowd, Warden* v. *Sullivan* (1940), 217 Ind. 196, 202, 203, 27 N. E. 2d 82, 85." *Loftus* v. *State* (1944), 222 Ind. 139, 143, 52 N. E. 2d 488.

The words "personal property of any kind or character," as used in the third and fourth sections of the Act, are construed under the rule of *ejusdem generis,* which in substance is, "that when words of specific or limited signification in a statute are followed by general words of more comprehensive import, the general words are construed to embrace only such things as are of like kind or class with those designated by the specific words, unless a contrary intention is clearly expressed. *Dowd, Warden* v. *Sullivan* (1940), 217 Ind. 196, 201, 27 N. E. 2d 82; *McNamara* v. *State* (1932), 203 Ind. 596, 600, 181 N. E. 512, and cases there cited; *Yarlott* v. *Brown* (1923), 192 Ind. 648, 653, 138 N. E. 17; *Wiggins* v. *State* (1909), 172 Ind. 78, 80, 87 N. E. 718; *Nichols* v.

conviction thereof, be imprisoned in the state prison not less than one [1] nor more than three [3] years." Section 10-304, Burns' 1942 Replacement.

*State* (1890), 127 Ind. 406, 408, 26 N. E. 839; *City of Jeffersonville* v. *Nagle* (1921), 191 Ind. 70, 72, 132 N. E. 4; *Marter* v. *City of Vincennes* (1948), 118 Ind. App. 586, 590, 82 N. E. 2d 410; *Chief Eagle Feather* v. *State* (1929), 89 Ind. App. 500, 504, 167 N. E. 147; *Bartles* v. *City of Garrett* (1929), 89 Ind. App. 349, 351, 166 N. E. 437." *Short* v. *State* (1954), 234 Ind. 17, 122 N. E. 2d 82, 85.

"Where there is nothing in the act itself to indicate that a word, or phrase, is used in a particular, or technical, sense, it is to be taken or accepted in its ordinary and popular meaning. *Massey* v. *Dunlap et al.* (1896), 146 Ind. 350, 358, 44 N. E. 641." *State* v. *Mears* (1938), 213 Ind. 257, 259, 12 N. E. 2d 343. In order "to determine the meaning of a statute it should be considered as a whole and that all its provisions should be read together. *State* v. *Louisville, etc., R. Co.* (1912), 177 Ind. 553, 96 N. E. 340, Ann. Cas. 1914C 1284; *Huff* v. *Fetch* (1924), 194 Ind. 570, 143 N. E. 705." *Kryder* v. *State* (1938), 214 Ind. 419, 425, 15 N. E. 2d 386. "It is a well recognized principle of construction that all of the language used in the statute will be deemed to have been intentionally used to effect the meaning of the act." *Bienz* v. *State* (1934), 206 Ind. 482, 484, 190 N. E. 170. " 'It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature.' " *Marks* v. *State* (1942), 220 Ind. 9, 18, 40 N. E. 2d 108. We will not impute to the legislature an absurd result by holding that the same act could be a crime under §1, and result in a penalty of from two to fourteen years, and at the same time it could be a criminal offense under §2, with a penalty of from one to ten years, or an offense under §3 which carries a penalty of from one to three years. The Act, being criminal and highly penal, must be construed in favor of an accused, and it is quite evident that each section was

intended to punish acts which were not included in other sections.

The statute on motor vehicles regulates house trailers as motor vehicles. A vehicle is defined as "Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." Section 47-1802(a), Burns' 1952 Replacement.

A semitrailer is defined as "Every vehicle with or without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle." Section 47-1805(b), Burns' 1952 Replacement.

A house car is defined as "Every vehicle with or without motive power equipped exclusively for living quarters for persons traveling upon the highways." Section 47-2402(t), Burns' 1952 Replacement.

Under Section 47-2601, Burns' 1952 Replacement, before any house car shall be operated or driven on any public highway the owner must register the same with the department, for which, under §47-2801, Burns' 1952 Replacement, a fee of $10.00 is collected.

Under the specific charge of the affidavit, and under the first degree arson section of the statute (§10-301, Burns' 1942 Replacement), it was necessary for the state to prove beyond a reasonable doubt that the place burned was both a dwelling and a house, which is a building. "Words and phrases shall be taken in their plain, or ordinary and usual, sense . . ." Section 1-201, Burns' 1946 Replacement. A house, in common understanding, is a building, and this court has twice so decided. *Ford* v. *State* (1887), 112 Ind. 373, 378, 14 N. E. 241, 244; *Schilling* v. *State* (1888), 116 Ind. 200,

204, 205, 18 N. E. 682, 684. In the latter case, in deciding an uncovered wagon was not a house, it was said, "In the ordinary and most common use of the word, house means an ordinary building for the use of a family—a dwelling-house—but that is not the only definition of the word, either in common parlance, or in the law. Both recognize such houses as packing-houses, smoke-houses, ice-houses, banking-houses, mill-houses, etc., and, in general business-houses. In such cases, the word house is the equivalent of building. *Ford* v. *State,* 112 Ind. 373, 378."

A house is a building designed for the habitation and residence of men. Black's Law Dictionary (4th Ed.).[5] This trailer never became a building. Its owner had it on another tenant's land on a day-to-day basis, without payment of rent. The owner said he was going to put the wheels back under it. It was never attached to the real estate, but was always a movable chattel. It would not be a building one day, and a vehicle the next day when the owner chose to move it, as he had the right and intended to do. Proof that the owner lived in his trailer did not make it a building, and if it was not a building, it was not a house any more than a tent is a building, or a truck equipped for living and sleeping is a building, or a wagon which could be used for the same purpose is a building.

It was not the duty of the appellant to prove the trailer was not a building, nor was it his duty to prove any fact tending to prove it was not a dwelling house.

---

5. "DWELLING HOUSE. A building inhabited by man.
. . .
"It must be a permanent structure; 1 Hale, Pl. Cr. 557; 1 Russ. Cr. 798; must be inhabited at the time; 2 Leach 1018, *N. State* v. *Warren,* 33 Me. 30; Ex parte Vincent, 26 Ala. 145, 62 Am. Dec. 714; *Com.* v. *Barney,* 10 Cush. (Mass.) 479; *People* v. *Cotteral,* 18 Johns. (N. Y.) 115; *Com.* v. *Posey,* 4 Call (Va.) 109, 2 Am. Dec. 560; *Scott* v. *State,* 62 Miss. 782. . . ." 1 Bouvier's Law Dictionary (Unabridged 3rd Rev.) p. 962.

The state did not prove how many cement blocks were temporarily put under it when the wheels were taken off, nor did it prove the cement blocks were below the surface of the ground, or joined together with mortar, nor did it prove who owned them, nor did the state prove whether they extended underneath the entire edge of the outer frame. It was not attached to the ground as much as a tent would have been. There was an entire failure of any proof whatever to show that this trailer was a building of any sort whatever.

Nor is any decision on any insurance policy persuasive in determining this appeal, for the insurance contract fixes the rights of the parties in an insurance dispute, and since the contract is drawn by the insurer, under the well recognized law of contracts that ambiguities are resolved against the party who drafts the instrument, a liberal construction is given to protect the insured; whereas, under the well established rule governing criminal cases, the construction must be in favor of the accused and against the state where there is any room for construction at all, both under the statute creating the offense, and under the indictment or pleading charging the crime.

It is not necessary to decide in this appeal under what circumstances, if any, a house trailer might lose its character as a vehicle, and become a dwelling house, which must be a dwelling building, under the first section of the arson act. The evidence in this appeal is all one way to the effect that this house trailer was still a vehicle, and under every recognized rule for construction of criminal statutes, the burning of such a vehicle was within the statutory prohibition of the burning of "Any other personal property of any kind or character whatsoever not herein specifically named" under the third section of the arson act, §10-303, Burns'

1942 Replacement. If the legislature wishes to make the burning of a house trailer, which is still a vehicle and not a building, arson in the first degree, it should specifically say so.

Judgment reversed and new trial ordered.

Bobbitt, Landis, Achor and Arterburn, JJ., concur in the reversal for failure of the state to prove the *corpus delicti* by independent evidence, but dissent from the reasoning that a house-trailer is not a dwelling-house.

### CONCURRING OPINION

BOBBITT, J.—I concur in the result reached in Chief Justice Emmert's opinion for the reason that the proof was insufficient to establish the *corpus delicti.*

However, I do not concur in that part of the opinion which holds that the house trailer herein involved was not a "dwelling-house" within the meaning of the Acts of 1927, ch. 44, §1, p. 122, being §10-301, Burns' 1942 Replacement, for the following reasons:

*First:* There is nothing in the first degree arson statute which indicates that the phrase "dwelling-house" is used in any particular or technical sense. Therefore, it is to be taken and accepted in its ordinary and usual meaning. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 591, 99 N. E. 2d 847; *Massey* v. *Dunlap* (1896), 146 Ind. 350, 358, 44 N. E. 641; *State* v. *Mears* (1938), 213 Ind. 257, 259, 12 N. E. 2d 343.

Section 1 of the arson statute defines the crime of first degree arson and provides as follows:

"Any person who wilfully and maliciously sets fire to or burns, or causes the setting of fire to or the burning, . . . of any dwelling-house . . . finished or unfinished, occupied or unoccupied, . . . such being the property of another; . . ." Acts 1927,

ch. 44, §1, p. 122, being §10-301, Burns' 1942 Replacement, *supra.*

"At common law arson was the malicious and voluntary or wilful burning of another's house, or, as it was sometimes stated, the wilful and malicious burning of the dwelling house of another. It was an offense against the security of the habitation and had reference to the possession rather than the property. It was considered an aggravated felony and of greater enormity than any other unlawful burning because it manifested in the perpetrator a greater recklessness and contempt of human life than the burning of a building in which no human being was presumed to be." 4 Am. Jur., Arson, §2, p. 87.

See also: 6 C. J. S., Arson, §2 (a), p. 719.

This court has held that burglary is an offense not against mere property, but against another's habitation, the gist of the crime being the felonious invasion of a man's dwelling. *Carrier* v. *State* (1949), 227 Ind. 726, 731, 89 N. E. 2d 74.

Both burglary and arson being offenses especially against the habitation—the security of the home—the gist of the crime of first degree arson as defined in §10-301, *supra,* is the felonious destruction of a man's dwelling—an offense against the security of his home.

The clear intent of the legislature as evidenced by §1 of the arson statute was to protect a man's home or place of habitation from wilful and malicious destruction by fire.

*Second:* Webster defines "dwelling-house" as a house occupied as a residence.

"House" is defined as "A structure intended or used for human habitation; especially a human habitation which is fixed in place and is intended for the private occupation of a family or families." Webster's New International Dictionary, 2d ed., p. 1040.

A "dwelling-house" is a building occupied by a family as a place of residence. Black's Law Dictionary, 3d ed., p. 632.

In defining a "dwelling-house" as used in the burglary statute[1] this court, in *Carrier* v. *State* ■ (1949), 227 Ind. 726, 89 N. E. 2d 74, *supra*, at pp. 731 and 732, said:

" 'The word "dwelling" imports a human habitation.'

. . . . .

" 'The character of the house is generally immaterial if it is occupied as a dwelling.' "

In *Gaines* v. *State* (1921) 191 Ind. 262, 132 N. E. 580, the appellant was charged with breaking and entering into the dwelling-house of . . . and, at page 265 of 191 Ind., this court said:

"In the case of *Bell* v. *State* (1866), 20 Wis. 630, which was a prosecution for burglary and larceny, it is said, 'The words "the dwelling house of Oscar F. Ferris," mean that the building broken and entered was his place of residence, . . .' "

In deciding that a delivery wagon, from which beer was dispensed at an old settlers' meeting, was not a house within the meaning of Section 5320, R. S. 1881, this court in *Schilling* v. *State* (1888), 116 Ind. 200, 18 N. E. 682, at p. 205 of 116 Ind., said:

"The statute under consideration, while it includes all sorts of houses, doubtless has more direct reference to business-houses. But a house must be some sort of a building or *inclosed structure*. It has been held that a statute punishing the keeping of houses of ill-fame may be violated by maintaining a flat-boat kept on a river, but it was so held because upon the boat was a cabin—an inclosed structure, furnished and protected from the water, and in which men and women ate, slept and lived. The

---

1. Acts 1941, ch. 148, §4, p. 447, being §10-701(a), Burns' 1942 Replacement.

cabin was a dwelling-house because it was an *inclosed structure in which persons lived. State* v. *Mullen,* 35 Iowa 199." (My italics.)

The Supreme Court of New York in *People* v. *Van Blarcum* (1806), 2 Johnson's Reports 105, considering the phrase "dwelling-house" as used in an indictment for arson, said:

"The court will not inquire into the tenure or interest, which such person has in the house burnt. It is enough that it was his actual dwelling at the time."

In determining the meaning of "dwelling-house" as used in an indictment for arson, the Supreme Court of Mississippi in *State* v. *Stringer* (1913), 105 Miss. 851, 63 So. 270, 271, said:

"A 'dwelling-house' is a house in which human beings 'usually stay, lodge, or reside.'"

As used in the Michigan arson statute the term "dwelling-house" has been construed to mean any house intended to be occupied as a residence, even though not occupied at the time of burning. *People* v. *Losinger* (1951), 331 Mich. 490, 50 N. W. 2d 137, 142, 143.

A railroad car, withdrawn from service and used exclusively for the purpose of habitation, has been held to be a dwelling-house within the meaning of that term as used in a burglary statute. *Gibbs* v. *State* (1910), 8 Ga. App. 107, 68 S. E. 742.

See also:
28 C. J. S., Dwelling or Dwelling House, pp. 599, 600, for further definitions of dwelling-house.

The Fifth Circuit Court of Appeals in *Aetna Life Ins. Co.* v. *Aird* (1939), 108 F. 2d 136, 125 A. L. R. 1436, in determining whether or not a trailer was a "building in the sense of a dwelling" within the terms of an insurance policy, said:

"Thus, what had been built for a dwelling or place to live, movable from place to place, was at rest, and was being occupied as a dwelling, as completely as if, instead of a trailer, it were a ready cut or knocked-down house, transported to the field, either set up, or in units for setting up.

"As such, it was certainly a building, in the sense of a dwelling, 12 C. J. S., Building, p. 378, *Rouse* v. *Catskill & N. Y. Steamboat Co.*, 59 Hun 80, 13 N. Y. S. 126; *Neekamp* v. *Huntington Chamber of Commerce*, 99 W. Va. 388, 129 S. E. 314. It was too, a building, in the generic sense of something built or constructed for use as a shelter or habitation for man or beast. If instead, of a completed trailer, the material which made it up, had been assembled on the lease, and there built into a dwelling or habitation for deceased's use, no one could, we think, contend that the resulting structure was not a building. The fact that it was completed before transportation and equipped with wheels to roll it, does not, we think, at all change the undisputed fact that in every essential respect, it was built for and was being used by deceased, as a shelter and habitation, in short, a dwelling."

In *Kimsey* v. *City of Rome* (1951), 84 Ga. App. 671, 67 S. E. 2d 206, it was held that a trailer equipped as a dwelling and connected with electric lines, water mains and sewers, was a dwelling-house within the restrictions of a zoning ordinance.

In *Lower Merion Tp.* v. *Gallup* (1946), 158 Pa. Super. 572, 46 A. 2d 35, it was held that house trailers mounted on boxes or jacks and connected with water and electric lines and remaining within the township for more than 30 days were dwelling houses within the meaning of the township building code ordinance. At page 36 of 46 A. 2d, it is said:

"A house trailer is simply a mobile house. It is as much a dwelling as any house which is built on a foundation and therefore not mobile.

. . . . .

"To say that these were not dwelling houses is an attempt to fictionalize a reality. They were used

and intended to be used as homes, and were as much dwellings as any similarly sized structures could be."

See also:

*Appeals of Palumbo* (1950), 166 Pa. Super. 557, 72 A. 2d 789.

The evidence in the case at bar discloses that a house trailer in which a man was living was burned on June 4, 1954. Jack Weber, a witness for the state, testified as follows:

"Q. What was burning when you arrived?
"A. This trailer.
"Q. Do you mean an automobile trailer?
"A. It was a house trailer.
"Q. House trailer?
"A. Built up on chocks of wood.
"Q. Not attached to the realty? It was not attached to the real estate, to the land?
"A. It was attached by blocks.

. . . . .

"Q. What kind of situation was it? I want it described to me.
"A. All I could see what was left of the trailer was that it was an aluminum trailer.
"Q. A trailer ordinarily has axles to operate on?
"A. In other words, the wheels had been taken off. It had been blocked up and was setting on blocks."

The owner of the trailer, a witness for the state, testified in part, as follows:

"Q. You did own that property out there? [The house trailer.]
"A. Sure.
"Q. Tell the court where that is located?
"A. Where it was located?
"Q. Yes.
"A. Right across from the Waterworks Road.
"Q. Just how did you have this piece of property placed out there?
"A. I pulled it out in there on wheels. I pulled the wheels out. I had an automobile chassis, and it was too heavy so I set it on concrete

blocks. I was intending to put wheels under it.

"Q. Did you set it on blocks?
"A. Yes.
"Q. Were you living in the trailer?
"A. I was.
"Q. You were making that as your home, is that correct?
"A. Yes, sir.
"Q. It was burned on the night of June 4, or early morning?
"A. Yes, sir.
"Q. Was the trailer equipped with a bed?
"A. Fully equipped with all my furniture and clothes in it.
"Q. You had your furniture and clothes in it?
"A. Yes, sir.
"Q. Was that destroyed?
"A. Everything burned to the ground.

"Q. At the time this trailer burned, it was placed on the premises?
"A. Right.
"Q. It couldn't be moved at that time without additional work being done to it?
"A. Another set of wheels put under it.
"Q. Did it have axles on it?
"A. Yes, sir, the axles was with the chassis.
"Q. In order to move it you would have had to jack it off the blocks and put wheels on it?
"A. Put wheels on it and take the blocks out.
"Q. That was the condition it was in at the time it was burned?
"A. Yes, sir.
"Q. You were living in it at that time?
"A. Yes, sir, I was.
"Q. Had your furniture and bed in there?
"A. Yes, sir."

Although the owner of the trailer was paying no rent for the use of the land on which the trailer was situated, he had permission from the person then in possession of the land to locate the trailer thereon.

The evidence is undisputed that the trailer here in question was a house-trailer—an "enclosed structure"

occupied by the owner as his residence and place of habitation at the time of the fire.

*Third:* The evidence in this case clearly discloses that the house trailer in question was, at the time it was burned, withdrawn from its use as a motor vehicle within the meaning of the Motor Vehicle Act, and was being used exclusively as a place of human habitation and occupied by the owner as his sole and only dwelling. His clothes, bed and other pieces of furniture were there, and he slept there.

It is not material that the house trailer was constructed of aluminum. Many dwellings are now of aluminum construction. Neither was it material that the wheels could be replaced under it, and it then could be pulled away by an automobile or other motor vehicle. It was a substantial enclosed structure built for, and being used by, the owner as a dwelling at the time it was burned. It may or may not have been personal property. I think that is not material in this case.

Cf: *Schilling* v. *State* (1888), 116 Ind. 200, 18 N. E. 682, *supra*. The determining factor here is whether or not the trailer was a house or other enclosed structure in which a person or persons lived at the time it was burned.

The house trailer here in question was, at the time of its burning, the only home or place of habitation which the owner had. It was as much his "dwelling-house" as if it had been the most palatial residence in Indiana.

In my opinion the property here burned was of like kind and class as that specifically mentioned in §10-301, *supra*, and its wilful and malicious burning would clearly constitute the crime of first degree arson.

See: *Ford* v. *State* (1887), 112 Ind. 373, 14 N. E. 241; *Jordan* v. *State* (1895), 142 Ind. 422, 41 N. E. 817.

I recognize that the act here under consideration is a criminal and penal statute and must be strictly construed against the state and in favor of a defendant where construction is necessary. However, the rule which should here be applied as required by the circumstances in this case, is ably stated in *Short* v. *State* (1954), 234 Ind. 17, 122 N. E. 2d 82, 85, as follows:

"Notwithstanding the rules noted above, the construction of penal statutes should not be wantonly narrowed so as to exclude the cases that are fairly covered by them. *Caudill* v. *State* (1946), 224 Ind. 531, 534, 69 N. E. 2d 549, *supra*. A criminal statute should be interpreted so as to give efficient operation to the expressed intent of the legislature, if reasonably possible. *Morris* v. *State*, (1949), 227 Ind. 630, 632, 88 N. E. 2d 328; *State* v. *Griffin* (1948), 226 Ind. 279, 284, 79 N. E. 2d 537, and cases there cited."

Achor, Arterburn, and Landis, JJ., concur.

NOTE.—Reported in 129 N. E. 2d 121.